UNITED STATES, Appellee

v.

Daniel J. DAULTON, Technical Sergeant
U.S. Air Force, Appellant.

No. 95–0734.
Crim. App. No. 30750.

U.S. Court of Appeals for
the Armed Forces.

Argued March 26, 1996.

Decided Sept. 30, 1996.

For Appellant: *David R. Dowell* (argued).

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Lieutenant Colonel Robert E. Williams, Jr.* (USAFR).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial at Vandenberg Air Force Base, California, composed of officer and enlisted members convicted appellant, contrary to his pleas, of committing indecent acts with children (3 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court-martial sentenced appellant to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority reduced the confinement to 8 years, but otherwise approved the sentence. The Court of Criminal Appeals affirmed the findings and approved sentence in an unpublished opinion.

We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED IN DENYING THE CHALLENGES FOR CAUSE AGAINST LIEUTENANT COLONEL [Lt Col] MENDOZA AND MAJOR MARCH-BANKS.

II

WHETHER THE MILITARY JUDGE VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION BY ALLOWING THE COMPLAINANT TO TESTIFY WHILE APPELLANT WAS NOT ALLOWED TO REMAIN IN THE COURTROOM AND COULD ONLY OBSERVE THE WITNESS VIA VIDEO.

## III

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING THE TESTIMONY OF [MRS. D].

## IV

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING THE TESTIMONY OF VICKI DAVIO.

We resolve Issues I and II in appellant's favor. Accordingly, we need not address Issues III and IV.

### Factual Background

The prosecution case consisted of four witnesses: the two alleged victims, the victims' mother, and an expert witness. The defense strategy was announced in their opening statement: "Children lie. Yes, they most certainly do lie."

During general *voir dire* of the members by trial counsel, LtCol Mendoza, a medical doctor, answered in the affirmative when asked, "Does it bother any of you that [the victims] have had to talk to many people?" During individual *voir dire*, LtCol Mendoza explained, "I am not making any decision on whether the accused is guilty or not. It's just that I said it bothers me. Because this is something that need not be talked about outside. That's why I said it bothered me."

Defense counsel asked LtCol Mendoza to explain what she meant by the phrase, "talk about it outside." She explained, "Not that the child is talking about it, it's just something that has happened. Maybe it's true, maybe it's not. I cannot explain it." Defense counsel asked whether she would be "bothered by having to make a decision about whether or not the abused [sic] occurred." She responded, "No, I don't think I will be bothered by it. It has to be proven first." She responded in the negative when asked, "Does it bother you that the children are going to have to testify as a means of providing that proof?"

LtCol Mendoza said that she received some training in psychiatry during medical school and training as an intern and as a resident. Her specialty was internal medicine. When working in the emergency room, she was required to determine if children were abused. She opined that child abuse occurs frequently. She has seen children who have been physically abused but never has been personally involved in a case of sexual abuse.

During general *voir dire* by defense counsel, Maj Marchbanks responded in the affirmative when asked if anyone had been "closely involved" in a sexual abuse case. During individual *voir dire* she revealed that her sister claimed to have been abused as a child by their grandfather. As a result, her sister "has been undergoing mental therapy for many years." Defense counsel asked Maj Marchbanks how she felt about her sister's situation. She responded, "Well, when she told me I was shocked, but I'm over that now. That was a number of years ago." Asked if she believed her sister's accusation, Maj Marchbanks responded, "Not at first, but then I did later. I think I was in denial." Defense counsel asked what caused her to change her mind and believe her sister. Maj Marchbanks answered that her mother "had a similar situation" with her grandfather.

Trial counsel asked Maj Marchbanks, "Can you separate what you know about your sister and your family and what they have told you from today's case?" She responded, "I believe so." Trial counsel then asked, "Whether or not you believe your sister, is that going to have any bearing on whether or not you believe these children today?" She responded, "No, it shouldn't." The military judge then asked, "Major, considering the facts that you've revealed to us, do you think you would have any particular difficulty or discomfort in sitting on this case?" She responded, "No, sir."

LtCol Mendoza was challenged for cause by the defense. Defense counsel argued that LtCol Mendoza "doesn't think it's right to put a child through this," and that "she is very emotionally involved in abuse and molest [sic] patients, with her being a doctor

and everything...." Defense counsel argued, "We think it would be hard for her to distinguish her professional background and be able to judge this case and we challenge her for cause." The military judge denied the challenge of LtCol Mendoza.

The defense also challenged Maj Marchbanks for cause. Defense counsel argued:

She's been personally involved in with her sister confiding in her that she has been abused by her grandfather, who is no longer alive, and that her mother in fact was abused by the same grandfather who is her father. The abuse happened during the ages of five and nine which is the age group we have here. The pattern is so similar to this case that we would say that even though she tried to give her assurances that she would be able to separate it, we don't believe that would be possible. She seemed very—she did not cry but she seemed very emotional when she answered her questions. She did give the assurances but we think it's a challenge for cause because she is too intimately involved.

The military judge denied the challenge. The military judge's denial of the challenges of LtCol Mendoza and Maj Marchbanks are the basis of Issue I.

The alleged victims were appellant's daughters, S and J, both of whom testified at the court-martial. S was 11 years old at the time of trial, and J was 9 years old.

The prosecution requested that J testify outside the presence of appellant, in a separate room, by using a one-way closed-circuit television system. J's therapist, Ms. Kelley, testified in support of the request. Ms. Kelley diagnosed and treated J from September 26, 1991, until the trial in December 1992. She saw J a total of 35 times, each session lasting 45–50 minutes. She testified that the purpose of her treatment was "to help re-empower [J] and to help [J] heal and recover from incestful acts." She diagnosed J as having a post-traumatic stress disorder.

Ms. Kelley testified that, when she first observed J, she "was having difficulty in relationships with friends[,]" was suffering from "hypersomnia where she wanted to sleep all the time," was tearful and anxious, and was regressing to the point where "she wanted to be a baby again." Ms. Kelley testified that "[J] just wanted to be able to be held and was very regressive in her behavior." Ms. Kelley attempted to help J prepare to testify. When the court-martial was initially scheduled for July 1992, J "felt at that time that she was strong enough and that she could do that and that she could testify."

When the court-martial was rescheduled for November, however, J "became very anxious about it and said that she did not want to do it[.]" When J and her mother came to Ms. Kelley's office, J "began to curl up in a fetal position" and "hang off the side of the couch so that we couldn't see her[.]"

Ms. Kelley testified that, if J were forced to testify, "[w]e would see her regress. Her symptoms would reappear. She would again feel like a victim. She would feel powerless and would feel that indeed she cannot trust adults." Trial counsel asked Ms. Kelley what she thought would happen if J were forced to testify in front of appellant. She testified that she believed J "will curl up and turn away. Probably cry and want to disappear." Trial counsel asked whether Ms. Kelley thought J would be able to respond to questions. She responded, "Probably not."

On examination by the judge, Ms. Kelley testified that J is afraid of appearing before her father "and anybody that might be on his defense—in his defense, who might be on his side, as she says." On further examination by the military judge, Ms. Kelley testified that she discussed two options with J. She discussed placing a barrier between her and appellant. J said, "no," because she knew that appellant would be behind the barrier. She also asked J if she would be able to testify in a separate room "with counsel and the judge and I wasn't sure who else, maybe with the jury present and with a support person," and "she said that she would; even though she was still reluctant, she would try."

During argument on the prosecution request, the defense proposed that J testify from a chair positioned so that she would not

be facing appellant. Trial counsel informed the military judge, "I've explored [the setup] with the [child's] back to the accused . . . and that's the most fearful for her because the[re] would be no screen and it would be clear that the accused is behind her and she would react."

The military judge found as follows: "Based upon the evidence that has been presented to the court, I find that there is substantial likelihood that if [J] were required to testify in the presence of the accused in this case, she: one, would not be able to reasonably communicate her testimony and two, may suffer emotional distress." The military judge then ordered

> that during the testimony of [J], the accused may not be present in the courtroom but that facilities be provided in the immediate vicinity of the courtroom for him to observe her testimony, through closed circuit television and audio. A support person to assist [J] may be permitted in the courtroom seated in the front row of the audience within direct sight of [J].

> With respect to counsel, defense I will leave that at your option. You certainly [are] permitted to be present in the courtroom. Should you chose that one or both of you want to be with Sergeant Daulton in the other room I'll permit that at your election. But you are permitted to be present in the courtroom.

Over a continuing defense objection, J testified in the manner prescribed by the military judge. Both defense counsel elected to remain in the courtroom. Before J's testimony, the military judge instructed the bailiff to stay with appellant in the separate room with the audio and video hook up, to ensure that the system was working, and to notify the military judge if there was an interruption in the audio or video, and "to make any communication to the counsel of [appellant] that he feels is necessary during the testimony of [J]."

Before J testified, the military judge instructed the court members as follows:

> Members of the court, the procedure that we will follow for the next witness is a little bit unusual. The court has determined that the next witness may testify without the accused being present in the court room. Arrangements have been made for him to observe the testimony of this next witness through a closed-circuit television hook up. You must not draw any inference adverse to the accused based upon the arrangements which have been made for the testimony of the next witness.

With appellant absent from the court room, J testified to the indecent acts alleged in specification 2 of the Charge. The exclusion of appellant from the court room during J's testimony is the basis for Issue II.

### Issue I: Challenges for Cause

Appellant asserts that the military judge abused his discretion by denying the challenges for cause of LtCol Mendoza and Maj Marchbanks. He argues that it "is simply too much to ask" that LtCol Mendoza, a medical doctor, set aside her feelings about child abuse and her empathy for victims of abuse. He argues that Maj Marchbanks' assurances that she could set aside her own experience with her grandfather's abuse of her sister and mother was implausible, especially because her sister was abused when she was between the ages of 5 and 9, the same ages as S and J. Appellant argues that both actual and implied bias were shown. Accordingly, "[i]n the interest of ensuring the fairness and impartiality of the proceedings, or at least the appearance of fairness and impartiality, the Military Judge had a duty to grant the challenges for cause."

The Government asserts that the military judge did not abuse his discretion. Government counsel argue that "[t]he military judge, after observing the demeanor of the members and listening to their answers," correctly determined that LtCol Mendoza and Maj Marchbanks "could be fair and impartial."

▆ RCM 912(f)(1), Manual for Courts-Martial, United States, (1995 ed.), codifies thirteen specific grounds for challenge and one general ground. The general ground, codified in RCM 912(f)(1)(N), applies when a

member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This general ground includes actual bias as well as "implied bias." *See United States v. Harris,* 13 MJ 288, 292 (CMA 1982) (recognizes concept of implied bias). "The focus of this rule is on the perception or appearance of fairness of the military justice system." *United States v. Dale,* 42 MJ 384, 386 (1995). The burden of establishing grounds for a challenge for cause is on the party making the challenge. RCM 912(f)(3).

▮ Distaste for particular offenses "is not automatically disqualifying." *United States v. Bannwarth,* 36 MJ 265, 268 (CMA 1993). Professional relationships among court members and counsel are not *per se* disqualifying. *See United States v. Hamilton,* 41 MJ 22 (CMA 1994) (former legal assistance clients of trial counsel not disqualified as court members); *United States v. Murphy,* 26 MJ 454, 456 (CMA 1988) (superior and subordinate members of rating chain not disqualified). Except for those duty positions specifically enumerated in RCM 912(f)(1), court members are not *per se* disqualified because of their duty position or military specialty. *See United States v. Dale, supra* (law enforcement officers not *per se* disqualified); *United States v. Dinatale,* 44 MJ 325 (1996) (senior medical officer who performed administrative review of accused's sanity report not disqualified).

▮ Likewise, a member is not *per se* disqualified because he or she or a close relative has been a victim of a similar crime. *See United States v. Brown,* 34 MJ 105 (CMA 1992) (father of victim of homosexual assault not disqualified in consensual sodomy case); *United States v. Reichardt,* 28 MJ 113, 116 (CMA 1989) (larceny victim not disqualified in robbery case; experience not "particularly traumatic"); *United States v. Porter,* 17 MJ 377 (CMA 1984) (larceny victim not disqualified in robbery case). We have reversed military judges, however, for denying challenges for cause where court members have been victims of similar violent or traumatic crimes. *See United States v.*

*Smart,* 21 MJ 15 (CMA 1985) (abuse of discretion in robbery case to deny challenge of victim of multiple armed robberies).

▮ A challenge for cause based on actual bias is "essentially one of credibility." *Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984). Because the military judge has an opportunity to observe the demeanor of court members and assess their credibility during *voir dire,* the military judge's decision is given "great deference." *United States v. White,* 36 MJ 284, 287 (CMA 1993).

▮ Implied bias, however, is reviewed under an objective standard. *United States v. Dinatale,* 44 MJ at 328. Implied bias exists "when most people in the same position would be prejudiced." *United States v. Smart,* 21 MJ at 20 (citations omitted). Implied bias is not viewed through the eyes of the military judge or the court members, but through the eyes of the public. *See United States v. Glenn,* 25 MJ 278, 280 (CMA 1987); *see also United States v. Smart, supra.*

▮ We set out our standard of review in *United States v. White,* 36 MJ at 287: "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate."

▮ Applying the foregoing principles to the challenge of LtCol Mendoza, we hold that the military judge did not abuse his discretion by denying the challenge. Although LtCol Mendoza had received psychiatric training and clinical experience as part of her medical education, her medical specialty was not *per se* disqualifying. Her background and experience as a medical doctor may have given her empathy for injured and abused children, but she expressed no preconceived notions about appellant's guilt and no inelastic attitudes regarding punishment.

▮ The challenge of Maj Marchbanks is more difficult. Both her sister and her mother had been sexually abused by her grandfather. Her sister was approximately

the same age as the victims when she was abused. Maj Marchbanks was "shocked" and disbelieving when she first learned of her sister's misfortune. Her responses to the military judge's questions were painfully honest but less than resounding. When the judge asked if she could separate her family's experience from appellant's case, she responded, "I believe so." When trial counsel asked if her initial disbelief of her sister's accusation would "have any bearing" on whether she believed S and J, Maj Marchbanks answered, "No, it shouldn't."

While the military judge's assessment of Maj Marchbanks' credibility is useful and warrants great deference on the issue of actual bias, it is not dispositive on the issue of implied bias. Like the security police officer in *Dale*, we believe that asking Maj Marchbanks to serve as an impartial member was "asking too much of both [her] and the system." 42 MJ at 386, quoting dissent of Judge Pearson in *United States v. Dale*, 39 MJ 503, 508 (AFCMR 1993). Accordingly, we hold that the military judge clearly abused his discretion by denying the challenge of Maj Marchbanks.

## Issue II: Confrontation

Appellant asserts that the military judge's exclusion of appellant from the courtroom while his daughter testified violated his Sixth Amendment right to confront the witness against him and his right to the assistance of counsel. He argues that this is a "structural error" that cannot be tested for prejudice and requires reversal. The Government argues that the procedure ordered by the military judge was permissible under *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), and did not violate appellant's Sixth Amendment right of confrontation. We hold, however, that the procedure violated appellant's rights of confrontation and assistance of counsel.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ... and to have the Assistance of Counsel for his defense." The Supreme Court has ruled that confrontation under the Sixth Amendment includes the literal right to face-to-face confrontation. *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The Court did not decide in *Coy* whether there were any exceptions to the face-to-face requirement. Thus, using a screen to prevent witnesses from seeing the defendant was a violation as there was no finding that the witnesses needed special protection.

Two years later in *Maryland v. Craig, supra*, the Court held that the face-to-face requirement was not absolute and that it may be limited when necessary to further an important public policy, provided the testimony's reliability is otherwise assured. The Court held that there must be a case-specific finding of necessity based on the likelihood of trauma to the child. The danger of trauma must arise from the defendant's presence, not merely from the courtroom itself. Finally, the trauma must be more than *de minimis*. In *Craig*, the Court approved of using a one-way closed-circuit television where all could see the witness but the witness could not see the defendant.

After *Craig*, Congress passed 18 USC § 3509, authorizing federal courts to order two-way closed-circuit testimony in child-abuse cases. The statute requires the judge to "support a ruling on the child's inability to testify with findings on the record." The statutory procedure includes requirements that "the attorney for the Government and the attorney for the defendant ... shall be present in a room outside the courtroom with the child and the child shall be subjected to direct and cross-examination." It also requires that the defendant "be provided with the means of private, contemporaneous communication with the defendant's attorney during the testimony." Regarding applicability of this statute to the military, the Navy–Marine Corps Court of Criminal Appeals has held that the statute's provisions "are applicable and provide guidance[.]" *United States v. Longstreath*, 42 MJ 806, 815 (1995). We have not yet decided whether the statute applies to courts-martial. *United*

*States v. Longstreath*, 45 MJ 366, 372 (1996).

In *United States v. Thompson*, 31 MJ 168 (CMA 1990), our Court held that the accused's right to confrontation was not violated when the military judge allowed the accused's two sons to testify with their backs to him, while facing the judge and counsel. Likewise, in *United States v. Williams*, 37 MJ 289 (CMA 1993), our Court held that the Confrontation Clause was not violated by allowing the accused's 10-year-old daughter to testify from a chair in the center of the courtroom. Although the accused was not able to look into his daughter's eyes when she testified against him, he could see her full profile.

Article 39(b), UCMJ, 10 USC § 839(b), requires that all proceedings, except deliberations and voting of members, be conducted in the accused's presence. RCM 804 implements Article 39(b), stating: "The right is grounded in the Due Process Clause of the Fifth Amendment and the right to confrontation clause of the Sixth Amendment of the Constitution." Drafters' Analysis of RCM 804, Manual, *supra* at A21–44. The Drafters' Analysis also advises that "[t]he requirement that the accused be present is not jurisdictional. While proceeding in the absence of the accused, without the expressed or implied consent of the accused, will normally require reversal, the harmless error rule may apply in some instances." *Id; see Coy v. Iowa*, 487 U.S. at 1021–22, 108 S.Ct. at 2803–04. An accused can waive confrontation rights by being disruptive in the courtroom or voluntarily absenting himself from the trial. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (disruption); *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (voluntary absence from trial).

▮ The military judge's necessity finding is reviewed "for clear error." *United States v. Carrier*, 9 F.3d 867, 870 (10th Cir. 1993). "We review *de novo* the legal effect [conclusions] of those findings under ... *Craig.*" *Id; United States v. Sullivan*, 42 MJ 360, 363 (1995) (factfinding reviewed under clearly erroneous standard and conclusions of law under *de novo* standard).

▮ The military judge's specific finding of necessity in this case complies with *Maryland v. Craig* and *United States v. Williams*, both *supra*. The procedure ordered by the military judge, however, was the exact opposite of the one utilized in *Craig*. There, the witness was outside the courtroom and the defendant was present. Here, the witness was in the courtroom and appellant was excluded. While appellant could observe J's testimony, he could not observe the reactions of the court members or the military judge, and they could not observe his demeanor. He could not communicate with his counsel except through the bailiff, who was not a member of the defense team.

We hold that this procedure violated the Sixth Amendment, Article 39, and RCM 804. While *Craig* and *Williams* permit restricting an accused's face-to-face confrontation of a witness, they do not authorize expelling an accused from the courtroom. *Cf. United States v. Peebles*, 3 MJ 177 (CMA 1977) (constitutional error to try accused in absentia without showing that he knew trial date); *United States v. Cook*, 20 USCMA 504, 43 CMR 344 (1971) (constitutional error to continue trial without establishing voluntariness of accused's absence).

In both *Craig* and *Williams*, the accused retained unrestricted communication with his counsel during the witness' testimony. Here, appellant was unable to communicate with his counsel except by sending messages through the bailiff. Even if the defense team had elected to split up, with one lawyer remaining in the courtroom and the other staying with appellant, consultation during J's testimony would still have been substantially impaired.

The Supreme Court has recognized that a denial of face-to-face confrontation was subject to harmless-error analysis. *Coy*, 487 U.S. at 1021, 108 S.Ct. at 2803. The Court further explained, however, that consideration whether the witness' testimony would have changed or whether the factfinder's assessment of the testimony would have been altered "would obviously involve pure speculation." As a result, the Court held that "harmlessness must therefore be determined

on the basis of the remaining evidence." *Coy,* 487 U.S. at 1022, 108 S.Ct. at 2803.

 In this case, there is virtually no "remaining evidence" of the offenses involving J. Accordingly, we are not satisfied that the error was harmless beyond a reasonable doubt with respect to specification 2 of the Charge, involving the alleged indecent acts with J. Therefore, we must set aside the findings of guilty of that specification.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge COX and Senior Judge EVERETT concur.

SULLIVAN, Judge (dissenting):

I respectfully dissent. I would affirm the lower court's decision in this case. In my view, the judge's ruling on the challenge for cause against Major Marchbanks is more like the one we approved in *United States v. White,* 36 MJ 284 (1993), than the one we rejected in *United States v. Dale,* 42 MJ 384 (1995).

In *Dale,* we voiced our disapproval of *per se* rules for *excusal* of panel members. As in that case, I join the majority's condemnation in appellant's case of a *per se* disqualification based upon a family member's experience with a similar crime. However, that is where the similarity between this case and *Dale* ends.

We reversed *Dale* because of our view that the deputy chief of security police for the base was the "embodiment of law enforcement and crime prevention" at the base and, thus, should have been excused from the panel. 42 MJ at 386. However, I cannot today join the majority in their holding that sexual abuse in the family of a court member casts a similar taint over these proceedings.

As I read the record, it also shows that defense counsel "did not make clear whether he was challenging [Maj Marchbanks] because of actual or implied bias." *White,* 36 MJ at 289. The record states:

MJ: Are there further challenges for cause?

IDC: Yes your honor. Our next challenge for cause would be against Major Marchbanks. She's been personally involved in with her sister confiding in her that she has been abused by her grandfather, who is no longer alive, and that her mother in fact was abused by the same grandfather who is her father. The abuse happened during the ages of five and nine which is the age group we have here. The pattern is so similar to this case that we would say that even though she tried to give her assurances that she would be able to separate it, we don't believe that would be possible. She seemed very—did not cry but she seemed very emotional when she answered her questions. She did give the assurances but we think its a challenge for cause because she is too intimately involved.

The "standard of clear abuse of discretion is appropriate in most cases whether the challenge is for actual bias or implied bias." *White,* 36 MJ at 288 (Sullivan, C.J., concurring). However, a military judge's credibility determination is not dispositive in both types of cases. In particular, allegations of implied bias brought under RCM 912(f)(1)(N), Manual for Courts–Martial, United States, 1984, are judged under an objective standard. *White,* 36 MJ at 288. In the present case, defense counsel did not make a challenge based on implied bias. Thus, "I find no clear abuse of discretion on the judge's part in denying [this challenge] on the basis of his belief in [Maj Marchbanks'] disclaimer." *Id.* at 289 (Sullivan, C.J., concurring).

Finally, I would hold that appellant's rights under the Confrontation Clause were not violated in this case. *See Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). He was able to observe the witness testifying by use of television. Moreover, to the extent that the majority incorrectly reads a statutory requirement for two-way television, *see* 18 USC § 3509, into

the practice of military law, I explicitly distance myself from that portion of the opinion.

CRAWFORD, Judge (dissenting):

I dissent from the majority opinion regarding Issues I and II. As to Issue I, the majority gives lip service to our decision in *United States v. White,* 36 MJ 284, 287 (CMA 1993). However, it applies an implied bias rationale which should be reserved for "extreme situations." *United States v. Jefferson,* 44 MJ 312, 321 (1996), quoting *Smith v. Phillips,* 455 U.S. 209, 222, 102 S.Ct. 940, 948–49, 71 L.Ed.2d 78 (1982).

As to Issue II, the majority in effect adopts a *per se* rule of reversal because of a 30–minute lack of simultaneous two-way conversation between appellant and his two lawyers. The defense did not ask for a recess or a continuance, and a reasonable inference may be drawn that defense counsel consulted with appellant prior to completing cross-examination. The majority's holding overlooks the rationale behind compulsory process, the right of confrontation, and the right to counsel in many decisions by this Court and the Supreme Court. *See, e.g., United States v. Taylor,* 44 MJ 254 (1996); *United States v. Woolheater,* 40 MJ 170 (CMA 1994). When one considers that (1) there was consultation between appellant and his lawyers, (2) any communications with the bailiff would have been privileged, (3) appellant's demeanor is not an issue, and (4) any adverse inference from appellant's absence from the courtroom was addressed with a cautionary instruction, it is not possible to sustain the conclusion that there was an error that affected the substantial rights of appellant. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

## ISSUE I

"Great deference" is given to military judges because they develop skills in observing members and judging their credibility. *White,* 36 MJ at 287. We cannot do that by merely examining the cold record. Because of a judge's unique ability and opportunity, we should be reluctant to substitute our judgment for his or hers. Clearly, we should not reverse a trial judge merely because we

would have reached a different decision at the trial level. That is not the standard. "An appellate court's standard is to overturn a military judge's ruling on a challenge for cause only for a clear abuse of discretion." *Id.*

The majority opinion is inconsistent with *White* and extends the doctrine of implied bias. As Justice O'Connor, concurring, stated in *Smith v. Phillips,* 455 U.S. at 222, 102 S.Ct. at 948:

> There are some *extreme situations* that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, *that the juror is a close relative of one of the participants in the trial or the criminal transaction,* or that the juror was a witness or somehow involved in the criminal transactions.

(Emphasis added.)

On *voir dire,* Maj Marchbanks admitted that at first she did not believe her own sister who claimed to have been molested. In fact, Maj Marchbanks stated that she only believed her sister after her mother informed her that she too had "had a similar situation." Maj Marchbanks' need for corroboration of her own sister's allegations, coupled with her belief that she could separate these events from those in appellant's trial, supports the judge's ruling.

I believe that, unless we substitute our judgment and disbelieve the court member, we must uphold the finding by the trial judge who had the opportunity to observe the demeanor of the witness when she provided assurances that she could listen to the evidence, follow the instructions, and disregard the past.

## ISSUE II

### Sixth Amendment

The Sixth Amendment guarantees a criminal defendant compulsory process, confrontation of witnesses and the right to counsel.

### Compulsory Process—Confrontation

In *Maryland v. Craig,* 497 U.S. 836, 845–46, 110 S.Ct. 3157, 3163–64, 111 L.Ed.2d 666

222

(1990), the Supreme Court stressed the essential elements of confrontation:

- physical presence of the witness
- oath
- direct and cross-examination of the witness
- observation of the demeanor of the witness by judge and jury.

The Court in *Craig* did not discuss the demeanor of the defendant. The defendant's demeanor is not in evidence unless the defendant testifies. Imwinkelried, *Demeanor Impeachment: Law and Tactics,* 9 Am.J. Trial Advoc. 183, 199–200 nn. and 144–46 (1995), and accompanying text. In this case, appellant did not testify.

I believe that to put this case in a complete perspective we must consider the full panoply of rights. Those rights start with the Sixth Amendment rights as described in *Craig* and continue through to the admission of hearsay evidence of an unavailable declarant under Mil.R.Evid. 804(b)(5), Manual for Courts–Martial, United States (1995 ed.). A chart of this panoply or continuum is as follows: *

| Compulsory Process | Amendment VI |
| --- | --- |
| Confrontation | Amendment VI |
| One-way closed-circuit television with witness in adjoining room and two-way oral communication | *Maryland v. Craig,* 497 U.S. 836 (1990) |
| One-way oral communication with defendant in adjoining room | *United States v. Daulton* |
| Defendant excluded from *in camera* competence hearing | *Kentucky v. Stincer,* 482 U.S. 730 (1987) |
| Exclusion of counsel and defendant from in-chambers *voir dire.* Court comment on lack of objection | *United States v. Gagnon,* 470 U.S. 522 (1985) |
| Video re-enactment created in defendant's absence | *United States v. Lyons,* 36 MJ 183 (CMA 1992) |
| Hearsay statement of an available declarant | *United States v. Morgan,* 40 MJ 405 (CMA 1994) |
| Hearsay statement of unavailable declarant | Mil/Fed.R.Evid 804(b)(5); *United States v. Ureta,* 44 MJ 290 (1996) |

While there are numerous cases with which one could contrast the facts in this case, I will discuss only five:

In *United States v. Lyons,* 36 MJ 183 (CMA 1992), the factfinder could observe the demeanor of the witness during the re-enactment of the crime for investigators. However, the following were absent from the video re-enactment:

- contemporaneous cross-examination
- oath
- presence of counsel
- demeanor of witness before factfinder

Yet this Court held that the video-taped testimony of the witness was admissible.

In *United States v. Morgan,* 40 MJ 405 (CMA 1994), the admitted hearsay of the available witness was missing the following:

- demeanor of witness
- oath
- contemporaneous cross-examination

* Although some may disagree with the juxtaposition of *Stincer, Daulton,* and *Gagnon,* they are clearly middle-of-the-road cases on the continuum and their exact placement is immaterial for the purpose of this dissent.

● presence of counsel

In *United States v. Ureta*, 44 MJ 290 (1996), the following were lacking:

● demeanor of witness

● demeanor of defendant

● contemporaneous cross-examination

● oath

Again, we held that the video-taped testimony was admissible.

In *Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987), the Court held that the defendant was not denied his right of confrontation when he was barred from an *in camera* hearing to determine the competency of two witnesses who were minors. Likewise, in *United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985), the Court held that the presence of counsel and the defendant was not necessary to ensure the fundamental fairness of challenges for cause in chambers. However, the Court did note that there was a waiver because there was no objection.

In this case, the judge and jury could observe the demeanor of the witness (J), J was physically present in the courtroom, J testified under oath, and there was both direct and contemporaneous cross-examination of J. Criminal defendants do not have an *"absolute* right to a face-to-face meeting with the witnesses against them at trial." *Craig,* 497 U.S. at 844, 110 S.Ct. at 3163. Using the *Craig* analysis, the judge determined that there would not be a face-to-face confrontation between appellant and J. Appellant does not challenge this ruling. The only aspect missing from appellant's trial, then, was the opportunity for the members to observe the demeanor of the accused. *See* 45 MJ at 219. Because the demeanor of the accused is evidence only when the defendant testifies, and because appellant did not testify, the lack of a chance to observe his demeanor in the courtroom during J's testimony is irrelevant.

### Right to Counsel

J's testimony consists of 13 double-spaced pages and most likely was taken in under 30 minutes.

After J's testimony, Captain Brand, one of the defense lawyers, stated:

If I could have just a moment sir.

MJ: Sure.

Q: (By IDC) When your mom was talking about these different things, the different sex things that you didn't like in the drawing, she was talking to both you and [S], right?

A: (By WIT) Yes.

IDC: Your honor, if I could just leave the court room for a minute please, and I'll be right back.

MJ: You may.

IDC: Thank you.

(The IDC exits the court room.)

(The IDC re-enters the court room.)

IDC: I have no further questions your honor.

MJ: The record should reflect that there were no proceedings conducted in the absence of Captain Brand, the defense counsel. Is there re-direct?

This exiting and reentering the courtroom and declaring that there were no further questions did not occur after the testimony of any other witness in the trial. Thus, there is certainly a strong and reasonable inference that defense counsel exited the courtroom to consult with appellant.

Appellant effectively waived his right to counsel. He had the right to have one lawyer in each room. There was no impediment to them asking for a continuance or for a recess. Captain Brand did not ask for either. There is a reasonable inference based on the record that she talked with appellant before concluding cross-examination. *Cf. County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir.1995).

There have been two cases that have dealt with the issue of inhibiting consultation between a defendant and his or her lawyer, *Perry v. Leeke*, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), and *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). The Court in *Geders* held that prohibiting the defendant from consulting

with his lawyer during a 17–hour overnight recess between direct and cross-examination was a violation of the right to counsel. However, in *Leeke,* the Court found harmless error in preventing consultation during a 15 minute recess after the defendant's direct testimony in his murder trial.

Likewise, the Supreme Court has also indicated in a unanimous opinion that where there was interference with the attorney-client relationship by law enforcement officials, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the [Sixth Amendment] violation may have been deliberate." *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). Here, again, one finds an analysis for prejudice.

In analyzing this case I ask myself, "What is missing from this picture?" At first blush the answer appears to be (1) appellant's presence before the factfinder, and (2) appellant's lack of consultation with his lawyers before completing cross-examination. However, upon closer examination, a different picture emerges. First, as previously mentioned, appellant's demeanor is not in evidence and any adverse inferences to be drawn from his absence were corrected by the judge's cautionary instruction to the members. Second, one can infer from the record that Captain Brand did consult with appellant before concluding the cross-examination. Even if appellant's absence during J's testimony in some way limited cross-examination of J, the Constitution guarantees "only the opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988), quoting *Kentucky v. Stincer,* 482 U.S. at 739, 107 S.Ct. at 2664, quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294–95, 88 L.Ed.2d 15 (1985). It is sufficient that a defendant have an opportunity to cross-examine the witness on bias, lack of care and attentiveness, poor eyesight, and bad memory. *Id.*

There should be no doubt that the presence of the witness in front of the factfinder fulfills the Sixth Amendment compulsory process and confrontation clauses. As to the right to counsel by way of two-way communication with counsel, appellant had the option of having one lawyer in each room and, presumably, communication between the two lawyers before conclusion of cross-examination. After such consultation with appellant, the defense had no further questions. In any event, in *United States v. MacCulloch,* 40 MJ 236, 239 (CMA 1994), we recognized that the tactics and decisions relating to the examination of a witness belong to counsel and not the defendant. *See* Standard 4-52(b), ABA Standards for Criminal Justice, The Defense Function (3d ed. 1993).

I suggest that most experienced lawyers would prefer to cross-examine a live witness under these circumstances rather than have the court admit hearsay evidence of an unavailable witness. *See* Mil.R.Evid. 804(b)(5).

Nor does the use of the bailiff as a messenger between appellant and his lawyers destroy the attorney-client privilege. The trial judge assigned the bailiff this role. Mil. R.Evid. 502 provides that a client may prevent his legal representative from disclosing confidential communications. A representative includes "a person ... assigned to assist a lawyer in providing professional legal services." Clearly, in this case, the bailiff was appellant's representative.

## CONCLUSION

If the Supreme Court can affirm *Leeke* and *Morrison,* and this Court can affirm *Lyons, Morgan,* and *Ureta,* then we can at least examine whether there was prejudicial error in this case. Appellant's burden of proof under Article 59(a) is to establish that an error "materially prejudices the substantial rights of the accused." Assuming that the lack of simultaneous, two-way communication between appellant and his lawyers for about 30 minutes was an error, appellant has not demonstrated what additional evidence would have been brought out during the cross-examination of J if appellant had had simul-

taneous, two-way communication with his lawyers during J's testimony.

Viewing the totality of the circumstances and considering the failure of the defense to set forth any other evidence they would have brought out, I would find any error in this case to be harmless. For that reason, I dissent.