UNITED STATES, Appellee,

v.

Doris L. NAPOLEON, Master Sergeant
U.S. Air Force, Appellant.

No. 96–0919.
Crim.App. No. 31332.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 5, 1997.

Decided July 10, 1997.

For Appellant: *Major Kevin P. Koehler* (argued); *Colonel Jay L. Cohen* and *Colonel David W. Madsen* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Major LeEllen Coacher* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Major Jane M.E. Peterson.*

### Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer and enlisted members sitting at Vandenberg Air Force Base, California, convicted appellant, contrary to her pleas, of premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. The adjudged and approved sentence provides for a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 44 MJ 537 (1996)

We granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS APPELLANT'S ORAL AND WRITTEN STATEMENTS MADE TO OSI SPECIAL AGENT KELLY.

### II

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE CHALLENGE FOR CAUSE OF COLONEL PETERSON.

### III

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, SINCE COUNSEL SHOULD HAVE TRIED TO SUPPRESS THE PART OF TSGT WALTERS' TESTIMONY THAT PERTAINED TO A PRIVILEGED COMMUNICATION.

We hold that Issue I is moot because the statements in question were not offered as evidence. We resolve Issues II and III against appellant.

### Issue I: Motion to Suppress Statements

The victim, Renee Harris, was stabbed to death in the parking lot of the Vandenberg Air Force Base Noncommissioned Officers' Club on the morning of July 31, 1993. Several hours after the stabbing, appellant was questioned by Special Agent (SA) Kelly, a member of the Air Force Office of Special Investigations (OSI). The court below found that SA Kelly "told the appellant only that she was suspected of 'stabbing' the victim, deliberately avoiding use of any word that would disclose the victim's death, although he knew the victim had died." The court below further found that "appellant did not know the victim had died, and Kelly did not want her to know." 44 MJ at 540.

At trial the military judge denied appellant's motion to suppress her statements to SA Kelly. For reasons not apparent from the record, the prosecution did not introduce these statements into evidence. That being the case, the court below held that the issue was moot. Appellant argues the issue is not moot, however, "since the military judge's pretrial ruling definitely affected trial defense counsel's tactical and strategic decisions throughout the trial." The court below rejected this argument, as do we.

The question whether an issue is moot is a question of law that we review *de novo. See United States v. Shover*, 45 MJ 119, 122 (1996). An issue is moot if resolving it "would not result in 'a material alteration of the situation for the accused or for the Government.'" *United States v. Clay*, 10 MJ 269 (CMA 1981).

Although appellant asserts that the military judge's ruling affected "tactical and strategic decisions throughout the trial," she has not identified what decisions were affected or what she would have done differently. Accordingly, like the court below, "we are in no position to speculate about other paths the defense might have taken with a different ruling." 44 MJ at 540. We therefore hold that the issue is moot. *See United States v. Sullivan*, 42 MJ 360, 364 (1995) (expectation

of privacy in wireless telephone call moot); *United States v. Loving*, 41 MJ 213, 258 (1994) (alleged misconduct of judge moot), *aff'd on other grounds*, —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

### Issue II: Challenge for Cause

During general *voir dire*, the senior member of the panel, Colonel (Col) Peterson, disclosed that he knew OSI Special Agent Stewart, a prosecution witness. In response to questioning by the military judge, Col Peterson said that he considered SA Stewart "very credible because of the job he has." He responded in the affirmative when asked if he would "be able to consider his testimony in accordance with the ... [military judge's] instructions ... regarding the credibility of the witnesses who may testify." Col Peterson answered in the negative when asked if he would "automatically" believe SA Stewart when weighing Stewart's testimony against other witnesses.

During individual *voir dire*, Col Peterson responded to defense counsel's questions by saying that he did not socialize with SA Stewart but knew him professionally. Col Peterson said that through his working with SA Stewart, he "found him to be an individual that if I were a commander, I would want in my organization." Col Peterson said that "there would be no question" that he would be able to weigh any contradictions in SA Stewart's testimony.

Col Peterson also disclosed that he had heard about the case. He explained:

> We were in [a] staff meeting and got a briefing as to some degree that there was a problem at the club and there was an individual that was killed and—or that died. I'm not—I can't even remember how it was presented. And then there were some articles in the paper early on. And that's about all I recall of the case.

In response to defense counsel's questions, Col Peterson described what he learned in the newspaper as follows:

> What I can remember was that there was an altercation at the NCO Club. An individual was stabbed. It was a female that had worked at the commissary and it occurred at the parking lot. The—what was

it—there was a lot of blood in the parking lot. It was a stabbing. And that's about it. It ended up in the hospital Emergency Room.

Finally, the military judge asked Col Peterson what he would rely on if he heard "evidence in the court which does not jive with" the newspaper accounts. Col Peterson responded, "The court." The military judge then asked, "Would you have any difficulty doing that?" Col Peterson responded, "No. None."

The defense challenged Col Peterson for cause, arguing that Col Peterson was "too familiar with this case to sit impartially," and that he considered SA Stewart "very credible." The military judge denied the challenge. Defense counsel then exercised a peremptory challenge against Col Peterson and preserved the issue for appellate review by announcing that he would have exercised his peremptory challenge against another member if the challenge for cause had been granted. *See* RCM 912(f)(4), Manual for Courts–Martial, United States (1995 ed.).

SA Stewart testified before the members on the merits. He described his search of appellant's home, conducted with her consent. During that search a set of knives in a knife block was seized because one of the knives was missing from the set and the knife found at the crime scene appeared to be part of the set. His credibility was not attacked during either cross-examination or argument.

Appellant argues that Col Peterson should have been removed for cause for both actual bias as well as implied bias. Final Brief at 11–12. Appellate government counsel argue that Col Peterson's official contacts with SA Stewart and his limited prior knowledge of the facts of the case were insufficient to constitute actual bias. Answer to Final Brief at 12–14. The Government does not address appellant's argument that Col Peterson should have been removed for implied bias.

■ RCM 912(f)(1)(N) provides that a court member "shall be excused" when that member "[s]hould not sit ... in the interest of having the court-martial free from substantial doubt as to legality, fairness, and

impartiality." This rule includes both actual bias and implied bias. *United States v. Minyard,* 46 MJ 229, 231 (1997), citing *United States v. Daulton,* 45 MJ 212, 217 (1996), and *United States v. Harris,* 13 MJ 288, 292 (CMA 1982). RCM 912(f)(3) provides: "The burden of establishing that grounds for a challenge exist is upon the party making the challenge."

On issues of actual bias, prior professional relationships and "innocuous prior knowledge of the facts of a case" are not *per se* disqualifying. *See United States v. Lake,* 36 MJ 317, 324 (CMA 1993); *see also United States v. Hamilton,* 41 MJ 22, 25 (CMA 1994). The test for actual bias is whether any bias "is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Reynolds,* 23 MJ 292, 294 (CMA 1987).

We review a military judge's ruling on a challenge for cause for abuse of discretion. While military judges must grant challenges for cause liberally, "we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White,* 36 MJ 284, 287 (CMA 1993). The question of actual bias "is essentially one of credibility and therefore largely one of demeanor." *Reynolds,* 23 MJ at 294, citing *Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). The military judge enjoys "great deference because we recognize that he has observed the demeanor of the participants in the voir dire and challenge process." *White,* 36 MJ at 287; *see also Daulton,* 45 MJ at 217.

On the other hand, issues of implied bias are reviewed under a somewhat less deferential standard. While actual bias is reviewed through the eyes of the military judge or the court members, implied bias is reviewed under an objective standard, viewed through the eyes of the public. *Daulton, supra.* The focus "is on the perception or appearance of fairness of the military justice system." *United States v. Dale,* 42 MJ 384, 386 (1995).

With respect to actual bias, we hold that the military judge did not abuse his discretion. Col Peterson's responses during *voir dire* unequivocally demonstrated his willingness to judge the case based on the evidence presented in open court in accordance with the military judge's instructions.

Although we consider the issue of implied bias a closer call, we agree with the court below that "a reasonable, disinterested layman would not see unfairness in Col Peterson's continued presence." 44 MJ at 541. Col Peterson's prior knowledge of the case was limited and general. His association with SA Stewart was not social, but purely professional. SA Stewart's credibility at trial was not contested. His testimony before the members was limited to his description of the search of the crime scene and the search, with her consent, of appellant's home. Under these circumstances, we hold that the military judge did not abuse his discretion on the question of implied bias. *See generally United States v. Allred,* 867 F.2d 856, 870 (5th Cir.1989) (no implied bias where juror had social contact with criminal investigator); *United States v. Bradshaw,* 787 F.2d 1385, 1390 (10th Cir.1986) (no implied bias where juror had business dealings with government witness).

*Issue III: Privileged Communications*

Appellant asserts that her trial defense counsel was ineffective because he did not object to the testimony of Technical Sergeant (TSgt) Walters. Appellant argues that TSgt Walters was a "lay minister" at the base chapel, that her conversation with him was protected by the clergy privilege under Mil.R.Evid. 503, Manual, *supra,* and that TSgt Walters' testimony would have been excluded if her defense counsel had objected.

At trial TSgt Walters testified that, on August 7, 1993, he had a conversation with appellant while "visiting her as a friend." He testified that the stabbing of Renee Harris was never mentioned during the conversation but that he understood that appellant was talking about the stabbing. He testified: "For the most part, she was letting us know that she was okay because that was my

reason for being there." During the conversation, appellant told TSgt Walters that "she realized what had happened and everything that had been done"; that "she wasn't angry or enraged or anything when the incident occurred"; and that she knew what she did was wrong. Appellant argues that she was prejudiced by TSgt Walters' testimony because it was the only direct evidence of premeditation and without it, she probably would have been convicted only of unpremeditated murder or voluntary manslaughter. Final Brief at 16.

In an affidavit prepared 13 months after her trial and 18 months after the allegedly privileged conversation, appellant states that TSgt Walters was a "layminister [sic] at one of the little chapel's [sic] on Vandenberg AFB, C[A], and that he was very involved with those activities." Appellant asserts that, while she was in pretrial confinement, TSgt Walters visited her and told her that "all of a sudden he felt compelled to come and visit [her], as one of his fellow sisters in trouble and need." During this visit, she "was compelled to lay ... [her] burdens before him." Finally, she asserts that she "felt very confident in expressing and releasing [her] innermost feelings, since ... [she] knew that all communications with ministers and chaplains were considered privileged communication." Finally, appellant asserts that her counsel knew that TSgt Walters was a lay minister.

TSgt Walters also prepared an affidavit at about the same time as appellant's. In his affidavit he states:

> My visits [with appellant] were as an acquaintance through our common organization and as a co-member of the Hospital Top Four. I am also a lay minister at the Base Chapel (# 2) and on one occasion my wife and I prayed with MSgt Napoleon between August and September 1993. My visits with MSgt Napoleon were to see if her children were taken care of and if she needed our help for anything. Periodically I would drop a gallon of drinking water by for her due to poor water conditions in the facility. As a servant of the Lord Jesus Christ I followed my teaching to visit those in captivity.

Counsel are presumed to be competent. To prevail on a claim of ineffective assistance of counsel, an appellant must rebut the presumption of competence. *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984); *United States v. Scott*, 24 MJ 186, 188 (CMA 1987). When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious. *See Loving*, 41 MJ at 244, 246; *see also Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) ("Failure to raise a meritless argument does not constitute ineffective assistance."). Thus we turn to the merits of appellant's claim that her conversation with TSgt Walters was privileged.

Mil.R.Evid. 503(a) protects as privileged "a confidential communication by the person to a clergyman or to a clergyman's assistant, if such communication is made either as a formal act of religion or as a matter of conscience." Mil.R.Evid. 503(b)(1) defines "clergyman" as "a minister, priest, rabbi, chaplain, or other similar functionary of a religious organization, or an individual reasonably believed to be so by the person consulting the clergyman." Mil.R.Evid. 503 is similar to proposed Fed.R.Evid. 506, which was not adopted. The Advisory Committee Note on the proposed federal rule indicates that "clergyman" was intended to mean a person "regularly engaged in activities conforming at least in a general way with those of a Catholic priest, Jewish rabbi, or minister of an established Protestant denomination." *See* 2 S. Saltzburg & M. Martin, *Federal Rules of Evidence Manual* 601–02 (5th ed.1990); S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 557 (3d ed.1991).

The question whether a conversation is privileged is a mixed question of law and fact. *United States v. Coleman*, 26 MJ 407, 409 (CMA 1988). Because the issue was not raised at trial, we have no factfinding by the military judge. The court below took the affidavits of appellant and TSgt Walters at face value and found that they fell short of showing a privileged communication.

We agree with the court below that appellant has not met her burden of showing that TSgt Walters, a lay minister, was a "clergyman" or "clergyman's assistant." The term "lay" means "not of the clergy." Webster's Third New International Dictionary 1281 (1986). Consequently, the term "lay minister" is ambiguous and could cover a broad range of persons, including musicians, ushers, and various attendants to the person presiding at a religious service. On their face, then, the affidavits submitted by appellant and TSgt Walters do not establish that TSgt Walters was a "clergyman" or was acting as a "clergyman's assistant." *See United States v. Brooks,* 2 MJ 102, 105 (CMA 1977) (essential element of privileged communication is that it was made to a person subject to the privilege); *United States v. Garries,* 19 MJ 845, 859–60 (AFCMR 1985) (communication to church deacon not privileged because deacon not qualified to perform substantive pastoral duties), *aff'd on other grounds,* 22 MJ 288 (CMA 1986).

We also hold that appellant has not met her burden of showing that she "reasonably believed" TSgt Walters was a clergyman. The affidavits contain no information about TSgt Walters' religious qualifications or his duties as a "lay minister." The circumstances of the visit suggest that TSgt Walters came to the confinement facility as a concerned friend, not as a clergyman.

▆▆ Finally, we hold that appellant has failed to show that her admissions to TSgt Walters were a "formal act of religion" or were made "as a matter of conscience." The Supreme Court has explained that the clergy privilege "recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). A communication is not privileged, even if made to a clergyman, if it is made for emotional support and consolation rather than as a formal act of religion or as a matter of conscience. *See Coleman,* 26 MJ at 407 (disclosures to father-in-law who was a minister not privileged). The circumstances of TSgt Walters' visit, as described in the affidavits, suggest that appellant was seeking emotional support and consolation, not guidance and forgiveness.

Because appellant has not shown that a motion to suppress the testimony of TSgt Walters would have been meritorious, she has not carried her burden of rebutting the presumption that her counsel were competent.

### Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge EFFRON concur.

SULLIVAN, Judge (concurring in part and in the result):

The defense loss of the suppression motion obviously affected its tactics in this case and, therefore, I would not consider it moot. I would not extend this Court's holding in *United States v. Gee,* 39 MJ 311 (CMA 1994) (failure to call character witnesses barred review of denial of defense motion to prevent Government from questioning said witnesses about accused's prior uncharged misconduct). I would hold that there was no Article 31, Uniform Code of Military Justice, 10 USC § 831, violation in this case. That article requires only that an accused or a suspect be advised of "the nature of the accusation," and here, appellant was told that she was suspected of "stabbing" the victim. These warnings were adequate. *See United States v. Rice,* 11 USCMA 524, 526, 29 CMR 340, 342 (1960); *United States v. Davis,* 8 USCMA 196, 198, 24 CMR 6, 8 (1957).

CRAWFORD, Judge (concurring in part and in the result):

I would hold that the military judge did not "clear[ly] ... abuse his discretion" in denying the challenge for cause against Colonel Peterson. *United States v. White,* 36 MJ 284, 287 (CMA 1993) (emphasis added). But implied bias should be reserved for "rare circumstances" when the potential juror has an emotional involvement which would adversely affect impartiality or was a victim of

a similar crime. See *Hunley v. Godinez*, 975 F.2d 316, 320 (7th Cir. 1992); *United States v. Minyard*, 46 MJ 229, 232 (1997) (Crawford, J., dissenting); see also *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).