# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist LARRY G. LOVELL, JR.**
**United States Army, Appellant**

ARMY 20111006

Headquarters, III Corps and Fort Hood
Patricia H. Lewis, Military Judge
Lieutenant Colonel Craig E. Merutka, Acting Staff Judge Advocate

For Appellant: Major Candace N. White-Halverson (argued); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Major Candace N. White Halverson (on brief); Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Major Candace N. White-Halverson, JA (on brief on specified issues).

For Appellee: Captain Daniel M. Goldberg (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Catherine L. Brantley, JA; Captain Daniel M. Goldberg, JA (on brief); Colonel John P. Carrell, JA; Major Robert Rodrigues, JA; Major Catherine L. Brantley, JA; Captain Daniel M. Goldberg, JA (on brief on specified issues);

31 March 2014

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of desertion with intent to shirk important service, absence without leave, and missing movement by design, in violation of Articles 85, 86, and 87 of the Uniform Code of Military Justice, 10 U.S.C. §§ 885, 886, and 887 [hereinafter UCMJ]. After entry of findings, an officer panel sentenced appellant to a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged and awarded appellant with nine days of confinement credit.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error, one of which warrants discussion and relief. Specifically, appellant alleges the military judge abused her discretion in granting a government challenge for cause against a panel member solely on the basis of the panel member's status as a conscientious objector. Based on the record before us, we agree. We also address one additional issue warranting discussion and relief.

## BACKGROUND

### *Challenge for Cause*

Appellant deployed with his unit to Iraq from March 2004 through March 2005. When he returned, appellant found his wife had developed an illness which caused seizures and resulted in her inability to drive a car. Appellant asserted that if he deployed again, he feared his wife would be unable to care for their two children, a five-year-old and an eighteen-month-old. Unable to obtain a hardship discharge before his next scheduled deployment, appellant chose to absent himself without leave from his unit on 18 September 2006, thereby missing movement on 1 October 2006, and then remained in desertion until 13 July 2011.

Appellant pleaded guilty to absence without leave, missing movement, and desertion with intent to shirk important service. He did so without the benefit of a pretrial agreement and chose an officer panel for sentencing.

During voir dire of potential panel members, the military judge asked the panel if any of them believed there existed grounds for challenge. After being informed of the general nature of appellant's offenses, potential panel member, Colonel (COL) WN, responded: "I filled out my questionnaire and there's a matter on there that the court may want to consider and I think it may be grounds for challenge." The military judge replied that the matter would be addressed in individual *voir dire*.

Colonel WN was called for individual *voir dire* and it proceeded as follows:

> Trial Counsel (TC): . . . you previously indicated you had a concern about a -- -- response you made on one of your -- your . . .
>
> COL [WN]: I have no concern -- --
>
> TC: -- -- questionnaire.
>
> COL [WN]: -- -- about the response I made on the questionnaire. The court may have a concern about a response I made on the questionnaire.

TC:  . . . what was the response you were referring to, sir?

COL [WN]:  The response on the questionnaire is:  I made clear to the court that I have a conscientious objector status.  Okay.  So, that's [Department of the Army] approved for longstanding, 1992.

TC: Yes, sir. That's all I had for you. Thank you, sir.

Colonel WN was asked no additional questions by the trial counsel, defense counsel, or the military judge.

The government then challenged COL WN for cause, as follows:

[H]e's a conscientious objector. I believe that will apparently skew his -- -- his view of an absence-type offense, especially here where the absence involves what is a to-shirk-hazardous -- --  or shirk important service in Iraq and missing movement and that movement we will explain was to Iraq, that he will unfairly mitigate that -- -- that offense based on his belief he brought into the courtroom today.

The military judge asked the defense counsel if he had any objection. Defense counsel responded:

We would object to that . . . [COL WN] didn't say anything to indicate that he would not be able to be fair and impartial.  He didn't say anything that indicates that he wouldn't consider this offense seriously.  I think I saw that he's deployed before himself.  So, I -- -- I don't think -- -- trial counsel had the opportunity during voir dire to try to elicit that kind of testimony from him and I didn't hear anything that would indicate that you should grant that challenge for cause.

The military judge asked the trial counsel if he wanted to question COL WN further.  Trial counsel responded that he did not believe it to be necessary and pointed out that "the member was -- -- brought the issue up himself, sua sponte, even though we -- -- we did have access to his -- -- his questionnaire."

The defense counsel responded again:
[H]e indicated it on his questionnaire, but he said to the court that it's not a concern of his, but that it might be a concern to the court.  So again, we didn't hear anything

3

> from him that would indicate that he is not able to serve as a court member, that he would take these type of offenses lightly, or that he wouldn't consider the full range of punishments. I mean, presumably the government could challenge him for cause on every single case. They -- -- picked him as a court member.

The military judge again asked the trial counsel if he wished to *voir dire* COL WN further. Trial counsel again declined, stating, "the specific nature of the offenses at issue here are what disqualify him and, on other cases, rape, sexual assaults, or a -- -- assaults, that sort of thing, would be very different . . . ."

The military judge, without explanation, granted the government's challenge.

*Major Change to Missing Movement*

Appellant was charged with and arraigned on violating Article 87, UCMJ, missing movement *by neglect*, in the Specification of Charge III. During the providence inquiry, appellant described knowing full well his unit was deploying and that he intended to miss movement to take care of his young children and ill wife. He then admitted that this was not a mistake but a purposeful act. This gave the military judge pause. After appellant disavowed the defense of necessity, the military judge then asked appellant whether he was guilty of missing movement by design rather than by neglect. The military judge then read appellant the definitions of "design" and "neglect." Appellant agreed with the military judge that he missed movement by design and the military judge said "[H]e is now 'pleading' guilty to . . . the Specification of Charge III. He is excepting out the word "neglect" and substituting for it 'design.'"

The trial counsel raised a concern that appellant was not on notice of this change and that the change could increase the punishment. The military judge advised appellant of the increase in punishment and asked appellant if he was pleading guilty to design rather than neglect. Appellant responded in the affirmative.

The military judge continued the providence inquiry until she again was interrupted by the trial counsel:

> I believe, [Rule for Courts-Martial] 918 would prevent an exception and substitution to increase the seriousness of the offense. The better modality would be use of [Rule for Courts-Martial] 603 to make a major change to the charge sheet with the expressed consent of the accused.

4

The military judge provided a recess during which the defense counsel had the opportunity to discuss options with appellant. During this recess, the trial counsel, unbeknownst to the military judge, modified the charge sheet striking "through neglect" and writing in "by design" for the Specification of Charge III. After the recess, the military judge continued as follows:

> MJ: Why did you change the charge sheet? . . . He was going to plead guilty by exceptions and substitutions and I would [have found] him guilty by exceptions and substitutions, but you don't have to change the charge sheet.

> TC: Oh no, your honor . . . . I indicated we cannot do that because it increased . . . .

> MJ: You're at a [Bad-Conduct Discharge]* [sic]. When I talked to the accused and let him know that in the event that we were going to go to a [general court-martial] . . . it would increase the punishment, as long as I advise him of such, if he busts providency and he's fully aware of that, you don't have to change the charge sheet. This is a BCD [sic]. It technically does not increase the punishment because we are at a BCD [sic]. Do you understand?

> . . . .

> DC: . . . I thought that's what we were agreeing to, ma'am . . . a major change on the charge sheet . . . that's what I was discussing with him . . . .

> MJ: Okay. That's what you were discussing with him
> . . . .

> DC: I thought the court agreed that we would have to do it by making a change to the charge sheet, not by pleading by exceptions and substitutions. So I explained to him that . . . it wouldn't . . . affect anything here in terms of maximum punishment and he agreed that was fine . . . .

> . . . .

---

* Appellant was tried by a special court-martial, which was not authorized to adjudge a sentence to confinement of greater than one year, and was also limited to adjudging a bad-conduct discharge. *See* Rule for Courts-Martial 201(f)(2)(B).

> MJ: [Y]ou do also understand that even though you have made this change, it technically does not prejudice the accused because we are at a BCD [sic] and it does not increase the punishment?"
>
> TC:   I was not aware of that your honor.  I understand the . . . cap on punishment, but it is . . . an aggravating term and . . . a substantial change to the charge sheet, the greater offense . . . I just assumed that it would require a major change and not an exception and substitution based on the rule.

The military judge concluded by asserting that appellant could have pleaded guilty by exceptions and substitutions without touching the charge sheet and she could have found him guilty.  Nevertheless, appellant re-entered his guilty plea to the modified charge of missing movement *by design* and the military judge found him guilty of the modified change.

## LAW AND DISCUSSION

### *Challenge for Cause*

As a matter of due process, "an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel.  *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (quoting *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001)); *See* Rule for Courts-Martial [hereinafter R.C.M.] 912(f)(1)(N).  A member may be removed for cause if it is shown that he or she "should not sit in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."  R.C.M. 912(f)(1)(N).  The discussion accompanying this rule provides that an "inelastic opinion concerning an appropriate sentence for the offenses charged" may be grounds for challenge under this provision.  R.C.M. 912(f) discussion.  The party that makes the challenge for cause has the burden of proving that grounds for a challenge exist.  R.C.M. 912(f)(3).  Here, the government bore the burden.

In evaluating a military judge's ruling on a challenge for cause, our superior court recognizes the military judge's superior position to evaluate the demeanor of court members.  A military judge's ruling on a challenge for cause will not be reversed absent a clear abuse of discretion.  *United States v. Quintanilla*, 63 M.J. 29, 35 (C.A.A.F. 2006).  "An abuse of discretion occurs if the military judge's findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law."  *Id*. (citing *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004)).  "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."  *Gore*, 60 M.J. at 187 (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C.

6

Cir. 1992). Further, there is no "liberal grant" policy when a military judge rules on a government challenge for cause. *United States v. Rodriguez-Rivera*, 63 M.J. 372, 382-383 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005)).

In evaluating challenges for cause based on claims of "inelastic attitude" concerning an appropriate sentence, "[t]he test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions." *United States v. McLaren*, 38 M.J. 112, 118 (C.M.A. 1993) (citations omitted) (quoting *United States v. McGowan*, 7 M.J. 205, 206 (C.M.A. 1979)). *See* R.C.M. 912(f).

A member shall be excused in "cases of actual or implied bias." *United States v. Napoleon*, 46 M.J. 279, 282–83 (C.A.A.F. 1997) (citing *United States v. Minyard*, 46 M.J. 229, 231 (C.A.A.F. 1997)); *See* R.C.M. 912(f)(1)(N); *see also United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996); *United States v. Harr*is, 13 M.J. 288, 292 (C.M.A. 1982). "The test for actual bias is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" *Napoleon*, 46 M.J. at 283 (quoting *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987)). "While actual bias is reviewed through the eyes of the military judge or the court members, implied bias is reviewed under an objective standard, viewed through the eyes of the public." *Napoleon*, 46 M.J. at 283 (citing *Daulton*, 45 M.J. at 217)). The focus "is on the perception or appearance of fairness of the military justice system." *United States v. Dale*, 42 M.J. 384, 386 (C.A.A.F. 1995). Thus, "[t]here is implied bias when most people in the same position would be prejudiced." *United States v. Armstrong*, 54 M.J. 51, 53–54 (C.A.A.F. 2000) (internal quotation marks and citations omitted).

While the law provides a map for this court to follow in evaluating the military judge's decision regarding a challenge for cause, here we find obstacles the military judge has left in our path. It is not clear from the record whether the military judge granted the challenge based on implied bias or actual bias. She made no assessment of the validity of the government's position on the record and was equally silent regarding the demeanor of COL WN. In fact, the military judge made no comment at all regarding her decision to grant the causal challenge. We are therefore left to review whether the military judge abused her discretion without any explanation as to how or why that discretion was exercised.

The record indicates COL WN served in the military for over 20 years prior to the time of this court-martial. He was designated a conscientious objector in 1992. The specifics of his designation and the nature of his beliefs are not contained in the record. The government concludes that conscientious objector status alone means COL WN may not serve as a panel member on absence-type related cases because he cannot objectively consider the government's argument and that he will "mitigate" appellant's misconduct. While this is certainly one possibility, it is equally likely

7

that COL WN, having gone through a rigorous conscientious objector vetting process, successfully serving over twenty years in the Army, attaining the rank of colonel, and even possibly deploying with the Army might be *less* favorable towards an accused who refused to follow orders and took it upon himself to absent himself from the military and not deploy.

While we are instructed to give deference to the military judge's assessment, we have nothing in the record upon which to give deference. The trial judge's failure to note the reasons for her decision on the record renders it impossible for us to determine the basis for her decision and defer to her judgment. We are also not persuaded by the government's argument regarding the self-evident lack of objectivity possessed by any conscientious objector. We, therefore, conclude the military judge abused her discretion by granting the challenge for cause.

*Major Change to Missing Movement*

Rule for Courts–Martial 603 sets out procedures for amending charges and specifications. Amendment is permissible depending on the nature of the change and when it is made. The rule distinguishes between major and minor changes, and changes made before or after arraignment. "Minor changes are those designed to correct inartful drafting of charges, misnaming of the accused, improper alleging of articles of the code, or other trivial mistakes." *United States v. Longmire*, 39 M.J. 536, 538 (A.C.M.R. 1994). Major changes "add a party, offense, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." R.C.M. 603(a). Based on the foregoing, we conclude the change of "through neglect" to "by design" was a major change pursuant to R.C.M. 603(a). Major changes "may not be made over the objection of the accused unless the charge or specification affected is preferred anew." R.C.M. 603(d).

While the military judge was correct in her observation that maximum punishment in this case was capped by the jurisdictional limitations of a special court-martial, she was wrong in asserting that appellant would not be "prejudiced" in any way by pleading to the greater offense. Not only does missing movement by design carry with it a greater maximum punishment than missing movement by neglect—two years confinement and a dishonorable discharge versus one year and a bad-conduct discharge—but the stigma associated with missing movement by design is greater due to the specific intent required to perpetrate the offense. In other words, regardless of the maximum punishments, missing movement by design is a greater and more serious offense than missing movement by neglect.

We are troubled by the fact that appellant's plea to a more severe offense was initiated by the military judge. But for this encouragement, the government would not have amended the specification to charge missing movement by design and the defense counsel would not have allowed it. The facts elicited from appellant during

the providence inquiry clearly established the elements of missing movement by neglect. It was not the military judge's responsibility or role to "up the ante" on appellant by soliciting him to plead guilty to a greater offense. We find the military judge abused her discretion by not accepting appellant's original plea to missing movement through neglect.

Regarding defense counsel's collusion in this unwarranted amendment, we discern no tactical benefit in agreeing to the major change and re-entering appellant's pleas. Appellant was not at risk of losing the benefit of a pretrial agreement. Furthermore, we find this judge-instigated major change prejudiced appellant by allowing the panel to punish him for a more serious offense than that with which he was originally charged.

## CONCLUSION

Ordinarily, in a case such as this, we would remand for a sentence rehearing. Furthermore, if we were to remand for a rehearing, it would be on a lesser offense than originally before the panel. Accordingly, out of judicial economy, we reassess and do so in a way that moots any further claim of prejudice.

The findings of guilty of Charge I and its Specification and Charge II and its specification are AFFIRMED. As to Charge III and its Specification, we AFFIRM only a finding of guilty to the lesser included offense of missing movement through neglect.

Reassessing the sentence based on the noted errors and the amended findings of guilty, we AFFIRM a sentence of no punishment. We find this purges the errors in accordance with *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013), and is also appropriate under Article 66(c), UCMJ. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by our decision, are ordered restored.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

9