# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DESTRO M. DELA PENA**
**United States Army, Appellant**

ARMY 20170534

Headquarters, Fort Campbell
Matthew Calarco, Military Judge (arraignment)
Gisela Westwater, Military Judge (trial)
Colonel Andres M. Marton, Staff Judge Advocate

For Appellant:  Major Todd W. Simpson, JA; Captain Scott A. Martin, JA.

For Appellee:  Lieutenant Colonel Eric K. Stafford, JA.

21 December 2018

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

Appellant was convicted at a judge alone general court-martial, pursuant to his pleas, of false official statement, sexual assault, and burglary in violation of articles 107, 120, and 129, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920, and 929 (2012) [UCMJ].  The court sentenced appellant to a dishonorable discharge, forty-two months confinement, and reduction to E-1.[1]

---

[1] The military judge initially sentenced appellant to a bad-conduct discharge, confinement for forty-two months, and a reduction to E-1.  After being advised by the trial counsel that the sexual assault had a mandatory dishonorable discharge associated with it, the judge "clarified" then "reconsidered" her sentence and re-announced the sentence as previously adjudged, but this time announcing a dishonorable discharge.  The charges exposed appellant to a maximum punishment

(continued . . .)

DELA PENA—ARMY 20170534

Appellant submitted his case for review without specific assignments of error. Appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), two of which claim ineffective assistance of counsel (IAC) during appellant's guilty plea and sentencing proceeding, which we will discuss.[2] In support of his claim of IAC, appellant and his wife submitted declarations under penalty of perjury pursuant to 28 U.S.C. § 1746.

**BACKGROUND**

Factually, appellant's case is straightforward. Appellant broke into his neighbor's home at night and sexually assaulted her. Appellant sodomized her while she was asleep or unconscious. Appellant then lied to a U.S. Army Criminal Investigation Command (CID) special agent during the official military investigation into his actions.[3]

On 31 December 2015, at Fort Campbell, Kentucky, appellant and his wife celebrated New Year's Eve in their residence along with their neighbor, Sergeant (SGT) B and her cousin. Sergeant B lived next door to appellant and their residences shared a common wall. Sergeant B's husband was out of town. Shortly after midnight, SGT B returned to her residence, checked on her four sleeping children, and then went to bed. She closed the front door, but left it unlocked so that her cousin, who was still at appellant's residence, could return. Although appellant and SGT B had been neighbors for approximately six months, SGT B never spoke to appellant prior to this evening. Most notably, SGT B did not do or say

_____

(. . . continued)
of forty-five years of confinement. His pretrial agreement limited confinement to five years.

[2] In addition to his IAC claim, appellant challenges the military judge's sentence reconsideration, arguing, in essence, that the change in punitive discharge from bad-conduct to dishonorable required a reduction in his adjudged confinement. While we find error in how the sentence was announced, we cannot find prejudice when the dishonorable discharge was mandatory as a matter of law.

[3] Appellant's last criminal act was his false official statement to CID on 21 January 2016. Although not relevant to the disposition of the case, we note that charges in this case were not preferred until 15 February 2017, 390 days after his last criminal act and 410 days after his assault of Sergeant B, a significant yet unexplained delay in what appears to be a simple and straightforward case. While we recognize sexual assault cases take time and a guilty plea record will often be silent as to many pretrial issues, we do not see how such a delay in a case such as this can enhance justice or convey to others confidence in the military justice system.

2

anything that evening that could reasonably lead appellant to believe that she would consent to any sexual activity with him.

On 1 January 2016, in the early morning hours and before sunrise, appellant opened, without authority or permission, the closed front door of SGT B's residence and proceeded upstairs to SGT B's bedroom where he found her in a deep sleep. He sat on the bed and after removing the covers, rubbed her, stroked her buttocks, forced her underwear down, licked her stomach, and ultimately penetrated her vulva with his tongue.

On 21 January 2016, when questioned by a CID special agent about his New Year's Eve actions, appellant initially lied, stating "I've never been in the house" and "I've never been in her room," denying any entry into SGT B's residence on the night in question. Appellant eventually confessed, admitting to breaking into the home, entering SGT B's bedroom, and sexually assaulting her.

## LAW AND DISCUSSION

We write to address appellant's *Grostefon* claim of IAC. In reaching our decision, we have considered appellant's 28 U.S.C. § 1746 declarations. While we note that his counsel did not submit affidavits, we do not need affidavits to reach our decision.

In *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), our superior court noted "a post-trial evidentiary hearing . . . is not required in any case simply because an affidavit is submitted by an appellant. In most instances in which an appellant files an affidavit in the Court of Criminal Appeals making a claim such as ineffective assistance of counsel at trial, the authority of the Court to decide that legal issue without further proceedings should be clear." *Id*. at 248. The court went on to articulate six principles[4] that guide the service courts of appeal in deciding

---

[4] The six *Ginn* principles are as follows:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

(continued . . .)

3

whether to order a factfinding hearing as authorized by *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). *Id.*

Ineffective assistance claims are reviewed "de novo." *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018). Appellant prevails on an ineffective assistance of counsel claim if he demonstrates "both '(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.'" *United States v. Captain*, 75 M.J. 99, 101 (C.A.A.F. 2016) (quoting *United States v.*

---

(. . . continued)

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

*Ginn*, 47 M.J. at 248.

*McIntosh*, 74 M.J. 294, 295 (C.A.A.F. 2015)); s*ee also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"With respect to the first prong, whether counsel's performance was deficient, courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689). "Since counsel are presumed competent, an appellant must rebut this presumption by showing specific errors that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001). Regarding the prejudice prong, appellant must show that "[b]ut for counsel's deficient performance, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial." *Rose*, 71 M.J. at 143 (citations and quotations omitted).

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Appellant claims, "[h]ad my defense team competently performed their duties, I would not have plead [sic] guilty." The deficiencies appellant relies on are as follows: (1) counsel failed to investigate exculpatory evidence, to wit, that SGT B told appellant's wife that the sexual activity was consensual and SGT B's "strong motive to fabricate the allegations," revenge for a prior report of domestic violence between SGT B and her husband; (2) counsel told appellant, based on "my CID interrogation, my only option was to plead guilty or else I would be sentenced to between 10 and 15 years of confinement;" (3) counsel failed to explore and discuss with appellant a motion to "suppress" his CID statement considering he was "sleep

deprived" during his interrogation; (4) counsel failed to raise, during sentencing, appellant's level of intoxication "as an extenuating factor" at the time of the sexual assault and burglary; and, (5) counsel failed to "negotiate for a disapproval of a dishonorable discharge." We conclude appellant failed to meet his burden of proof on either *Strickland* prong.

## A. *Prejudice in a Guilty Plea*

We begin our analysis with a discussion of prejudice in a guilty plea. Appellant's statement that "[he] would not have plead guilty," while a prerequisite to making any IAC claim arising from a guilty plea, without more, does not establish prejudice warranting relief. "'A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice.'" *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990); s*ee also Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) ("mere allegation" that defendant would have insisted on trial, while necessary to raise a claim of IAC linked to a guilty plea, is "ultimately insufficient" to establish prejudice). It is appellant's burden to establish a "reasonable probability that, but for counsel's errors, [the accused] would not have pleaded guilty and would have insisted on going to trial." *Barker*, 7 F.3d at 633 (citation omitted). A bald unsupported claim is not sufficient to meet this standard.

## B. *Failure to Investigate*

Assuming without deciding the truth of appellant's failure to investigate "exculpatory evidence" allegation, no relief is warranted as appellant fails to establish any prejudice. Appellant acknowledges he personally told his attorneys about the alleged exculpatory evidence from his wife prior to entry of any plea. Appellant fails to show how his counsel's speaking to his wife about this information would have changed his counsel's advice regarding the plea or, more importantly, his personal decision to plead guilty. *See, e.g.*, U*nited States v. Buie*, 1990 U.S. App. LEXIS 27245, at *2 (4th Cir. 30 Mar. 1990) (appellant's claim that he would not have pleaded guilty had his attorneys discovered an alleged exculpatory document was without merit as appellant knew about the document at the time of his plea).

Appellant's case is not a case where counsel and appellant were unaware of potentially favorable evidence prior to entry of pleas. We find appellant's claim that he would have pleaded not guilty to ring hollow when considering the following: (1) the inherent bias of appellant's wife; (2) the non-compelling nature of SGT B's alleged motive to fabricate, revenge for a prior reporting of domestic violence between SGT B and her husband; (3) that SGT B also told appellant's wife that appellant sexually assaulted her, a statement made almost contemporaneously with the alleged "exculpatory statement" and likely to be brought out during any cross-

examination of appellant's wife; (4) appellant's detailed plea colloquy where he said he assaulted SGT B when she was "asleep, unconscious, and otherwise unaware of the sexual act;" (5) appellant's detailed confession to CID that tracked his plea colloquy; and, (6) SGT B's in-court testimony, albeit during sentencing, that tracked the non-consensual nature of appellant's sexual assault.

### C.  Advice on How to Plead

Regarding counsel's advice on how to plead, we find neither deficient performance nor prejudice.  Considering appellant's crimes, its attendant facts and circumstances, and all evidence presented on sentencing, a sentence of fifteen years would have been lenient and most definitely appropriate following a guilty plea, let alone a contest.  That said, appellant paints a picture regarding his plea that is compellingly rebutted by the record of trial, a record that unequivocally demonstrates that any decision to plead guilty was an informed decision by an accused who was not forced, coerced, or pressured to enter into his plea.  Appellant knew, based on his plea alone, he could be sentenced to a dishonorable discharge, forty-five years confinement, forfeiture of all pay and allowances, and reduction to E-1, the same exposure he faced if he contested the charges.  The military judge asked appellant, "are you pleading guilty not only because you hope to receive a lighter sentence, but also because you are convinced that you are, in fact guilty?"  Appellant replied, "yes, your Honor."

### D.  Motion to Suppress

Regarding appellant's assertion of IAC regarding his confession, specifically his inability to review the confession and counsel's alleged failure to explore and discuss with him a possible suppression motion, we find no merit.  Appellant fails to articulate how a pretrial review of a confession, the contents of which he obviously knew, would have caused him to opt for a contested proceeding.  First, appellant, as part of his plea, waived all "waivable" motions, a pretrial agreement provision covered by the military judge during appellant's plea inquiry.  Second, he fails to provide any evidence that any suppression motion had any chance, even a remote one, of succeeding.  "'When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious.'"  *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)).

### E.  Failure to Introduce Mitigating Evidence

As for counsel's failure to raise appellant's level of intoxication during sentencing, we note appellant is not claiming counsel failed to raise a viable defense to either his sexual assault or burglary conviction.  *See, e.g., United States v.*

*Hearn*, 66 M.J. 770, 776 (Army Ct. Crim. App. 2008) (voluntary intoxication may refute specific intent *mens rea* element of an offense); *United States v. Peterson*, 47 M.J. 231, 233-234 (C.A.A.F. 1997) (level of intoxication must be so severe as to render accused "'incapable of forming the necessary intent'" (quoting *United States v. Box*, 28 M.J. 584, 585 (A.C.M.R. 1989)). Assuming appellant's level of intoxication was not so severe as to affect his guilt,[5] a fact borne out by appellant's express disclaimer of any and all defenses to the charges and specifications in his offer to plead guilty, he fails to articulate how counsel's introduction of voluntary intoxication during sentencing would not be matter inconsistent with his guilty plea thus requiring, at the very least, reopening of the providence inquiry or at its worst, a rejection of appellant's plea. *See, e.g., United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014); *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). More importantly, appellant fails to show that he would have elected a contested proceeding had he known that his impairment would not be presented during sentencing, impairment that likely would be seen as appellant making an excuse for inexcusable behavior and perhaps enhancing, vice reducing, his punishment.

### F. Failure to Negotiate a Good Pre-Trial Agreement

Lastly, we find neither deficient performance nor prejudice stemming from appellant's negotiated pretrial agreement. Appellant claims counsel were deficient because they failed to "negotiate for a disapproval of a dishonorable discharge." Appellant, however, fails to provide any evidence that any government official would have supported or even entertained such an offer. As previously noted, appellant faced a dishonorable discharge, forty-five years confinement, forfeiture of all pay and allowances, and reduction to E-1. His counsel negotiated a sentence limitation of five years, an eighty percent reduction in his confinement exposure. Ultimately, appellant was sentenced to forty-two months confinement, eighteen months less than his bargained for deal and less than eight percent of his maximum exposure.

---

[5] Appellant's 28 U.S.C. § 1746 declaration states, "On the night of the alleged incident, I was intoxicated. During the presentencing phase of the trial, my defense team should have presented evidence of my level of intoxication as an extenuating factor." His *Grostefon* "brief" states, "Appellant was substantially impaired by alcohol." Appellate briefs, and statements contained therein, are not evidence. *See, e.g., United States v. Lewis*, 42 M.J. 1, 4 (C.A.A.F. 1995) (factual assertions in pleadings are not evidence); *United States v. Griffin*, NMCCA 200201471, 2007 CCA LEXIS 565, at *13 (N.M. Ct. Crim. App. 20 Dec. 2007); *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013); *Taylor v. First Med. Mgmt.*, 508 Fed. Appx. 488, 498 (6th Cir. 2012). Beyond the statements herein provided, the record, to include the stipulation of fact, is silent as to appellant's level of intoxication.

Appellant sexually assaulted his neighbor, a woman with whom he first spoke the night he assaulted her, an assault he committed by breaking into her home, at night, while her four children slept and her husband was away.

Having considered appellant's IAC allegations supported by declarations, the record of trial, and *Ginn* principles one, two, four, and five, we find that appellant has failed to show a reasonable probability that but for counsel's alleged errors he would have insisted on going to trial, thus failing to meet his burden to establish prejudice warranting relief. Our resolution of appellant's claim on his failure to establish prejudice obviates any need to order responsive affidavits or order a *DuBay* hearing. S*ee United States v. Melson*, 66 M.J. 346, 350-51 (C.A.A.F. 2008) (if presumption of competence is overcome, appellate court "must" compel defense counsel to explain actions before any ineffective assistance finding).

## CONCLUSION

The findings and sentence are AFFIRMED.

Senior Judge WOLFE and Judge SALUSSOLIA concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

9