**UNITED STATES, Appellee,**

v.

**Private E–1 Gordon E. McDOWELL, Jr., 496–72–2374, United States Army, Appellant.**

**CM 445144.**

U.S. Army Court of Military Review.

21 Feb. 1985.

---

Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, Jr., JAGC, and Captain Craig E. Teller, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Garreth E. Shaw, JAGC, were on the pleadings for appellee.

Before MARDEN, PAULEY, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Appellant was convicted, in accordance with his pleas, of stealing mail and being absent without leave (AWOL), in violation of Articles 134 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 886 (1982).[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for five years, and total forfeitures. Pursuant to a pretrial agreement, the convening authority approved all but the confinement portion which he reduced to fourteen months.

Appellant contends, *inter alia*, that the military judge erred by denying his motion to dismiss the theft charge because he was deprived of his right to a speedy trial; and that he was denied due process of law because he was treated as a sentenced prisoner while in pretrial confinement, in violation of Article 13, Uniform Code of Military Justice, 10 U.S.C. § 813. We find the first contention to be meritorious not only as to the theft charge but also to the AWOL charge.

### I

The chronology of events relative to the speedy trial matter begins on 15 July 1982, when appellant, a member of the Kansas National Guard, was ordered to active duty for training at Fort Benning, Georgia, for a period of about twelve weeks. On 25 August, he was restricted to a "holdover unit" pending an investigation of an allegation of larceny of telephone services. On 13 September, the charge of theft of telephone

---

1. Appellant was originally charged with desertion in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885.

services was preferred. On 10 November, an additional charge involving theft of mail was preferred. On the same date, subsequent to preferral of the second theft charge, the trial defense counsel submitted a speedy trial request to the special court-martial convening authority. On 1 December, appellant received nonjudicial punishment for the theft of telephone services. On 2 December, the charge of theft of mail was referred to a special court-martial empowered to adjudge a bad-conduct discharge and the trial date was set on 14 December 1982 for 17 January 1983.

On 3 January 1983, the theft of mail charge was re-referred to a special court-martial empowered to adjudge a bad-conduct discharge for the purpose of providing a new court-martial panel. On 27 January, this charge was withdrawn and on 31 January joined with a charge alleging a larceny of traveler's checks. The checks were contained within one of the letters included in the theft of mail charge. Appellant's commanding officer testified he did not prefer this charge earlier, even though he knew of it, because he did not have possession of the checks after they had been cashed. In February the two charges were forwarded to an investigating officer for investigation under Article 32, Uniform Code of Military Justice. On 5 April 1983, the defense requested a sanity board. On 8 April, the convening authority ordered a sanity board. On the same date, the theft charges were referred to a general court-martial.

On 1 May 1983, appellant went AWOL. He was apprehended and confined for the military on 3 June. When appellant was returned to Fort Benning he was placed in pretrial confinement beginning 13 June 1983. An additional charge of desertion was preferred on 23 June. After another Article 32 investigation, that charge was referred on 29 July.

On 9 August 1983, defense requested a delay until 23 September pending completion of the sanity board. On 15 August all charges were referred to the same general court-martial. On 9 September the sanity board published its results. On 19 September appellant requested that he be released from confinement. His request was denied by the military magistrate. On 7 October 1983, the first Article 39a session was held. Subsequently, the larceny charge was dismissed as multiplicious for findings.

Appellant was on restriction from 25 August 1982 until 1 May 1983 when he went AWOL. Under the terms of the restriction order, appellant was restricted to his barracks where he could not go past the orderly room on one side of the building or the mess hall on the other. He could not go anywhere without an escort; was never allowed to leave Fort Benning; and was only allowed outside his immediate area twice, both times on week-ends. When appellant was given a pass, the time period was 1300 to 2100 hours and limited him to the movies or to the post exchange. He was allowed to go to the chapel but had to sign in and out and go by a designated route. Appellant was only given $20.00 of his pay each week. He cut grass, dug out tree stumps, cut wood, and worked in the repair and utilities shop for a time. There is no indication in the record that appellant participated in any military duties or activities of his organization. The Government did not contest the conditions of the restriction.

## II

■ In conjunction with his motion to dismiss the theft charge because he was deprived of his right to a speedy trial, appellant maintained that his restriction from 10 November 1982 through 1 May 1983 [2] was tantamount to pretrial confinement. We agree. *United States v. Pow-*

2. Specifically, the Government's accountability begins on 10 November 1982, the date the charge was preferred and the date appellant requested a speedy trial. The Government's accountability stops on 5 April 1983, the date appellant requested a sanity board. The Government is not accountable for the period 25 August 1982 through 10 November 1982 because the offense that initiated the restriction was disposed of by the imposition of nonjudicial punishment.

*ell*, 2 M.J. 6 (C.M.A.1976); *United States v. Williams*, 37 CMR 209 (C.M.A.1967). We hold that appellant's restriction amounted to pretrial confinement in violation of the first prong of the rule enunciated in *United States v. Burton*, 44 CMR 166 (C.M.A. 1971).

▆ In *Burton*, the United States Court of Military Appeals held that:

A presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed.

*Id.* at 172. The Government may still show diligence, despite pretrial confinement of more than three months, if there are "extraordinary circumstances" to justify delay. *United States v. Marshall*, 47 CMR 413 (C.M.A.1973). In this case, we find that the Government has not shown extraordinary circumstances to excuse its delay. The Government asserts that the preferral and investigation of the additional charge of theft of traveler's checks justifies the delay until January. We disagree. Appellant's company commander testified he knew about the offense and could have charged him earlier but failed to do so because he did not have possession of the checks. This is not a valid excuse. We do not have a situation where the subsequent misconduct of the accused causes a delay in order to try all known charges at one trial. *See United States v. Ward*, 1 M.J. 21 (C.M. A.1975); paragraphs 30*g*, and 33*h*, Manual for Courts-Martial, United States, 1969 (Revised edition). The traveler's checks, the subject of the Additional Charge preferred in January 1983, were taken from the mail matter that was previously charged in November 1982. Thus, both charges arose out of the same transaction, a fact noticed by the military judge who dismissed the theft of traveler's checks charge on multiplicity grounds. Though there were delays resulting from the defense request for a sanity board and appellant's later AWOL, they do not excuse the Government's inac-

tion because these events post-dated the critical ninety-day period.

▆ Appellant also asserts that the second prong of *Burton* was violated because he had formally requested and was denied a speedy disposition of the theft of mail charge. Again, we agree. When a speedy trial request has been submitted, the Government is on notice that any delays are subject to close scrutiny. *United States v. Johnson*, 1 M.J. 101 (C.M.A.1975). "[T]he Government must respond to the request and either proceed immediately or show adequate cause for any further delay." *United States v. Burton*, 44 CMR at 172. There is nothing in the record to indicate that the Government even acknowledged the request. Since the Government did not proceed immediately nor did it show adequate cause for the delay, it did not meet its burden of reasonable diligence in processing the theft charge. Therefore appellant was deprived of his right to a speedy trial on that ground.

### III

▆ We also find that the AWOL charge should be dismissed for lack of due diligence. Constant motion is not required but delays may not be uncommonly long, unreasonable or oppressive. *United States v. Tibbs*, 35 CMR 322 (C.M.A.1965). Under the circumstances, the Government failed to move expeditiously. It took almost four months to complete a simple sanity board and to prefer, investigate and bring to trial a simple AWOL charge. Generally the defense is responsible for the delay that results from a request for a sanity board. *United States v. Colon-Angueira*, 16 M.J. 20 (C.M.A.1983). However, the Government too has some obligation to proceed with dispatch. We hold it did not do so here. Instead of giving this case the priority it deserved considering the time it was pending trial, the Government relegated it to the backwaters of the mental hygiene clinic's in-box. The resulting report was not lengthy or complicated and was based mainly on interviews conducted with appel-

lant before he went AWOL. Considering the fact that appellant had, by now, been placed in actual pretrial confinement, we find oppressiveness from the delay from June to October 1983.

Because the action of this Court results in the setting aside of both charges, the second assignment of error is rendered moot.

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge MARDEN and Judge PAULEY concur.