**UNITED STATES, Appellee,**

v.

**Private E1 Robert A. WILKINSON, 399–76–2427, United States Army, Appellant.**

**ACMR 8702590.**

U.S. Army Court of Military Review.

7 Nov. 1988.

For Appellant: Major Kathleen A. Van-
derBoom, JAGC, Captain Gregory B. Up-
ton, JAGC (on brief).

For Appellee: Colonel Norman G. Coo-
per, JAGC, Lieutenant Colonel Gary F. Ro-
berson, JAGC, Major Kathryn F. Forrester,
JAGC, Captain Mark E. Frye, JAGC (on
brief).

Before DeFORD, KANE, and
WERNER, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Contrary to his pleas, the appellant was convicted of conspiracy to commit housebreaking, violation of a lawful general regulation by possessing a knife with a locking, four-inch blade, damage to private property, wrongful use of marijuana, larceny (two specifications), and housebreaking, violations of Articles 81, 92, 109, 112a, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 909, 912a, 921, and 930 (1982 & Supp.1987) [hereinafter UCMJ]. The convening authority approved his sentence to a dishonorable discharge, confinement for 36 months, and forfeiture of all pay and allowances.

I

On appeal, the appellant contends that his right to speedy trial under Rule for Courts–Martial 707 was violated inasmuch as 170 days passed between the dates of his restriction and his trial. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 707(a) [hereinafter R.C. M.]. We disagree.

On 8 May 1987, the appellant's company commander withdrew the appellant's pass privileges "to keep the [appellant] out of trouble." On 21 May 1987, the company executive officer in the capacity of acting company commander met with the appellant's battalion commander and requested that the appellant be placed in pretrial confinement. This request was precipitated by the discovery of drug abuse paraphernalia in the appellant's possession aggravated by his involvement in numerous other offenses which were under investigation and by collateral, minor infractions which included four incidents for which the appellant received punishment under Article 15, UCMJ. The acting company commander also advised the battalion commander that the appellant had earlier that week "threatened" to commit suicide or to go "AWOL." The appellant's battalion commander denied the request. As a lesser form of the restraint, the appellant's acting company commander notified the appellant that he was "restricted." The terms of his restriction and the reasons therefor were memorialized in writing as follows:

> The pass privilege for [the appellant] have been pulled pending trial by Special Courts Martial [sic]. He is hereby restricted to Warner Barracks II, Warner Barracks I (with an E–5 or above escort), and any training area designated by the Commander.

However, the appellant's company commander, executive officer, and first sergeant all testified that the requirement for an escort to Warner Barracks I was "lifted" after "approximately two weeks." This was done because the appellant's psychological evaluation determined that he was not a suicide risk, because the requirement for an escort taxed the unit's manpower resources, and because the company commander decided that the appellant was not a flight risk. The appellant was notified of the charges against him on 26 July

1987. On these facts, the following timetable is suggested:

8 May 1987 Appellant's pass privileges suspended.

21 May 1987 Appellant restricted to Warner Barracks II.

4 June 1987[1] Appellant's restriction to Warner Barracks II lifted; pass privileges suspended.

26 July 1987 Appellant informed of the charges against him.

9 November 1987[2] First day of trial.

At trial, the government contended that the "restriction" was not imposed as a pretrial restraint pending disposition of the appellant's offenses but as an administrative safeguard against suicide. The government also presented evidence in support of its argument that the restriction was imposed in order to enforce restrictions previously imposed as punishment under Article 15, UCMJ, to alleviate tension with the local community, and to prevent the appellant from getting into further trouble. Additionally, the government argued that the order was nothing more than a "condition on liberty" under R.C.M. 304(a)(1); that the measures were "lifted" each time the appellant went to the field thus restarting the speedy trial clock; and, finally, that any period for which the government was accountable should be excluded as good cause under the standards announced in *United States v. Durr*, 21 M.J. 576 (A.C.M.R.1985).

The military judge denied the motion to dismiss on the grounds that the order of 21 May did not amount to pretrial restriction which would trigger the speedy trial provisions of R.C.M. 707. He found that the restraint imposed was "purely administrative" and intended by the command to protect the appellant from suicide and to prevent him from committing other disciplinary infractions.

■ Administrative restraints—restraints which are ancillary to criminal jus-

---

1. Because the evidence at trial only established an indefinite "two weeks" as the duration of the acting company commander's order, we will assess a duration of fourteen days against the government.

2. The appellant was placed in pretrial confinement on 5 November 1987, seven days prior to trial.

tice processes—do not trigger the speedy trial clock because they are imposed for purposes unrelated to military justice. R.C.M. 304(h). The test is "whether the primary purpose in imposing conditions on liberty is to restrain an accused prior to trial in order to assure his presence at trial or to avoid interference with the trial process." *United States v. Bradford*, 25 M.J. 181, 186 (C.M.A.1987). If, however, the evidence of record *"supports a conclusion"* that the primary purpose for the pretrial restraint is related to an "upcoming court-martial," the speedy trial rule of R.C.M. 707(a) applies. *United States v. Bradford*, 25 M.J. at 186–87 (emphasis added). In the case at bar, the order by the appellant's acting company commander on 21 May stated quite succinctly that he was imposing restraint "pending trial." This statement, considered in light of the absence of any restraint at the time the appellant initially threatened suicide, the failure of the command to dispense with restraint once they were advised by competent medical authorities that the appellant was not a suicide risk and their stated concerns that the appellant was a flight risk, belies the self-serving testimony of the government witnesses that the restraint was simply an administrative measure to prevent the appellant's suicide. This evidence supports a conclusion that the restraint was related to the anticipated prosecution of the appellant. Accordingly, the military judge erred in finding that the restraint was administrative in nature. Therefore, the circumstances of this case must be examined in light of the speedy trial rule of R.C.M. 707. *Cf. United States v. Bradford, supra.*

Rule for Courts–Martial 707(a) generally provides that "[t]he accused shall be brought to trial within 120 days." In promulgating this rule, the President established a 120–day numerical standard for speedy trial. *United States v. McCallister*, 27 M.J. 138 (C.M.A.1988). *See United States v. Cherok*, 22 M.J. 438, 439 n. (C.M.A.1986). This standard exists independent of the 90–day speedy trial rule established by judicial interpretation of Article 10, UCMJ, 10 U.S.C. § 810. *United States v.*

*Harvey*, 23 M.J. 280 (C.M.A.1986) (summary disposition).

■ Just as the 90–day speedy trial standard is triggered by the imposition of pretrial confinement or arrest or their functional equivalents, the 120–day standard is triggered only by the earlier of:

(1) Notice to the accused of preferral of charges under R.C.M. 308; or

(2) The imposition of restraint under R.C.M. 304(a)(2)–(4); or

(3) Entry on active duty under R.C.M. 204.

R.C.M. 707(a). Rule for Courts–Martial 304(a) identifies four types of pretrial restraint: conditions on liberty, restriction in lieu of arrest, arrest and confinement. These types of restraint are defined in R.C.M. 304(a) as follows:

(1) *Conditions on liberty.* Conditions on liberty are imposed by orders directing a person to do or refrain from doing specified acts. Such conditions may be imposed in conjunction with other forms or restraint or separately.

(2) *Restriction in lieu of arrest.* Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits; a restricted person shall, unless otherwise directed, perform full military duties while restricted.

(3) *Arrest.* Arrest is the restraint of a person by oral or written order not imposed as punishment, directing the person to remain within specified limits; a person in the status of arrest may not be required to perform full military duties such as commanding or supervising personnel, serving as a guard, or bearing arms.

· · · · ·

(4) *Confinement.* Pretrial confinement is physical restraint, imposed by order of competent authority depriving a person of freedom pending disposition of offenses.

However, only the latter three forms of restraint—restriction in lieu of arrest, arrest, and confinement—will trigger the 120–day speedy trial rule. R.C.M.

707(a)(2). The characterization of the nature of the restraint by the command does not determine its actual legal nature; the legal effect of restraint imposed upon an accused prior to trial is to be judicially determined. *See United States v. Walls,* 9 M.J. 88, 90 (C.M.A.1980). Consequently, restraint of an accused otherwise labelled "restriction" may have legal consequences unanticipated by the command. The circumstances of an accused's restriction may be tantamount to pretrial confinement under R.C.M. 304(a)(4) such as to trigger the ninety-day *Burton* Rule or the ninety-day speedy trial rule of Rule for Courts–Martial 707(d). *United States v. Harvey, supra. See, e.g., United States v. McDowell,* 19 M.J. 937 (A.C.M.R.1985). A similar result will follow where restriction rises to the level of "arrest" as that term is defined within R.C.M. 304(a)(3). *See, e.g., United States v. Acireno,* 15 M.J. 570 (A.C.M.R. 1982). On the other hand, restriction to "the vicinity" or "local area" of the military installation may not even amount to a condition on liberty under R.C.M. 304(a)(1).[3] *See, e.g., United States v. Facey,* 26 M.J. 421 (C.M.A.1988) (restriction to the "local area" defined as 100 miles). This court must therefore determine whether the restraint imposed in the case at bar falls within the class of restraint which would trigger the speedy trial clock of R.C.M. 707 and, if it did, whether the 120 day speedy trial provision of R.C.M. 707 was violated.

■ Clearly, the restriction to which the appellant was subjected did not rise to the level of confinement or arrest, nor does the appellant contend that it did. Nevertheless, the restriction imposed was obviously more onerous than that imposed in *Facey.*

Although counsel went to great lengths to litigate the speedy trial issue, the record in the case at bar does not apprise this court of the actual limits of the appellant's restriction. While reference to "Warner Barracks I" and "Warner Barracks II" may provide the military judge, the respective counsel and the appellant with an abundance of information regarding the conditions of the appellant's restriction, these terms are not defined in the record nor are they susceptible to judicial notice by *this* court. Mil.R.Evid. 201(b) (a judicially noticed fact must be one *generally* known or capable of *ready* and *accurate* determination). Consequently, the record does not adequately set forth the terms and conditions of the limits of the appellant's restriction. Accordingly, we find that the appellant's restriction on 21 May 1987, to the area of Warner Barracks II constitutes restriction in lieu of arrest under R.C.M. 304(a)(2) insofar as the appellant was obviously restricted to some specified—albeit indeterminate—limit. Accordingly, the speedy trial clock was triggered on 21 May 1987. R.C.M. 707(a)(2).

■ However, the evidence of record also establishes that this restriction was of short duration, no more than a few weeks. After that time, the only restraint imposed upon the appellant was denial of an off-post pass; he otherwise had free and unlimited access to the entire installation of Warner Barracks with all of its support and recreational facilities. Because this limitation is only slightly more onerous than that noted by the United States Court of Military Appeals in *Facey* and because the appellant's free movement was only limited to the *general* confines of the installation and not to any specific area of the installation, we find that the restraints imposed in the case at bar, considered in a light most favorable to the appellant, constitute at best a condition on liberty as defined under R.C.M. 304(a)(1).

■ Rule for Court–Martial 707 provides that the 120–day speedy trial clock "shall run only from the date on which charges or restraint are reinstituted" if an accused is released from pretrial restraint for a "significant period." R.C.M. 707(b)(2). Pretrial restraint triggering the speedy trial

---

3. When a citizen accepts the "Kings Schilling," his or her liberty of free movement is per se restricted. Soldiers have no automatic right to go where they choose when off duty unless they have "pass privileges." The lack of such privileges is literally a "restraint on liberty." Therefore, that form of restraint will, in the usual case, have no impact on rules relating to speedy trial.

clock was imposed on 21 May 1987. This restraint was, as noted above, lifted some two weeks later (we will assume on or about 4 June 1987) at which time the appellant was free to enjoy the "full rights accorded to all other servicemembers." *See United States v. Britton*, 26 M.J. 24 (C.M.A.1988). Although the appellant was subject to conditions on his liberty—the privilege of leaving the installation and travelling within the local community, this fact alone does not alter the fact that a "break" has occurred in the pretrial restraint for which the speedy trial clock will run. The interval of time between termination of pretrial restraint triggering the speedy trial clock under R.C.M. 304(a)(2) and the notice of charges under R.C.M. 304(a)(1) exceeded fifty days. Accordingly, a significant break occurred in the running of the speedy trial clock and the 120–day speedy trial clock was triggered anew when the appellant was notified of the preferral of charges on 26 July 1987. *Cf. United States v. Britton, supra.* Accordingly, the prosecution employed only 106 days of the 120–day limit permitted by R.C.M. 707 in the pretrial processing of appellant's court-martial.

## II

■ The appellant also contends that the Specification and Charge of Charge III (willful and wrongful damage to a store window, the property of Rudolf Huettner) is multiplicious for findings with the Specification and Charge of Charge VI (unlawful entry of the Huettner store). We disagree. In *United States v. Jones*, the United States Court of Military Appeals ruled that failure of an accused to move that charges be made more specific is fatal to any belated claim that offenses are multiplicious for findings. *United States v. Jones*, 23 M.J. 301, 303 (C.M.A.1987). On the face of the specifications, it does not appear that the appellant gained entry to the Huettner store through the window. If these specifications were in fact multiplicious, the matter should have been raised before the trial court.

The findings of guilty and the sentence are affirmed.

Judge KANE and Judge WERNER concur.