# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOPER, WILLIAMS, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class ADDIEL A. GONZALEZ**
**United States Army, Appellant**

ARMY 20230599

Headquarters, 11th Airborne Division and U.S. Army Alaska
Larry A. Babin, Jr., Military Judge
Colonel William D. Smoot, Staff Judge Advocate

For Appellant: Captain Amir R. Hamdoun, JA; William E. Cassara, Esquire (on brief); Captain Andrew W. Moore, JA; William E. Cassara, Esquire (on reply brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Stephen L. Harmel, JA; Captain Dominique L. Dove, JA (on brief).

8 December 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WILLIAMS, Judge:

Appellant raises four assignments of error, which merit discussion but no relief. Appellant alleges his defense counsel was ineffective because he failed to investigate appellant's case, failed to zealously represent appellant, failed to request credit for restriction tantamount to confinement, and failed to move for dismissal pursuant to Rule for Courts-Martial [R.C.M.] 707.[1] Appellant further avers his guilty plea was improvident because he was compelled to plead guilty by his defense counsel. Appellant also claims he is entitled to confinement credit pursuant to *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985). Finally, he contends the

---

[1] Appellant's second, third, and fourth assignments of error present similar questions outside the context of ineffective assistance of counsel. We will disaggregate appellant's allegations of ineffective assistance of counsel and address each alongside assigned errors II (Plea Involuntary); III (Restriction Tantamount to Confinement), and IV (R.C.M. 707).

military judge erred by not dismissing his case when the government violated his right to a speedy trial under R.C.M. 707. We disagree.

## BACKGROUND

Appellant surreptitiously recorded himself sexually assaulting his wife, or attempting to do so, on multiple occasions. His wife reported the malfeasance to U.S. Army Criminal Investigation Division (CID) special agents. She provided digital media cards to support her allegations.

Appellant's command implemented conditions on his liberty after his wife's allegations. Generally, these conditions limited his ability to leave post and to travel to certain locations on post. Additionally, appellant's travel on post was conditioned on having an escort. These conditions were imposed over two different periods with an approximate month gap between.

The prosecution of appellant's crimes took multiple turns. His wife recanted her allegations shortly after her initial complaint, and the government took several months to prefer charges and conduct an Article 32 preliminary inquiry. During this period, defense counsel interviewed appellant's wife multiple times. As a result of these interviews, defense counsel called appellant's wife to testify at the preliminary hearing. She testified favorably for appellant. The preliminary hearing officer did not find probable cause that the offenses occurred and recommended against trial by court-martial. Later, CID agents recovered deleted videos from the digital media cards appellant's wife provided when she made her initial complaint. Soon after appellant reviewed these videos, he pleaded guilty.

The military judge sitting as a general court martial found appellant guilty, pursuant to his plea, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ], and sentenced him to fifty-five months of confinement, reduction to E-1, and a dishonorable discharge.

## LAW AND DISCUSSION

### A. Defense Counsel was not Ineffective

Appellant argues his defense counsel was ineffective because defense counsel did not adequately investigate his case and failed to secure evidence that appellant believed would help his case.

*1. Law*

We review allegations of ineffective assistance of counsel de novo. *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citing *United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020)). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

"With respect to *Strickland*'s first prong, courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689). This presumption can be rebutted by "showing specific errors that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citation omitted).

"As to the second prong, a challenger must demonstrate 'a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different.'" *Datavs*, 71 M.J. at 424 (quoting *Strickland*, 466 U.S. at 694) (alteration in original). "'It is not enough to show that the errors had some conceivable effect on the outcome . . . .'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Courts may analyze the two prongs under *Strickland* independently, and if appellant fails to meet either prong, the claim fails. 466 U.S. at 697 (Stating an appellate court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). "If it is easier to dispose of an [IAC] claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

When a claim of ineffective assistance of counsel is raised on appeal, this court applies the principles established in *United States v. Ginn* to determine whether it may decide the case without further proceedings. 47 M.J. 236 (C.A.A.F. 1997). While this court has "factfinding power on collateral claims," Article 66, UCMJ, limits that power. *Id.* at 242. Consequently, we may consider affidavits, but we do not have the discretion "to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Id.* at 243.[2] Such questions of fact must be resolved in a post-trial

---

[2] Although there are disagreements between appellant's and his defense counsel's affidavits, any disputes can be resolved from the record of trial. Accordingly, we do not require a post-trial evidentiary hearing. *Ginn*, 47 M.J. at 248.

evidentiary hearing. *Id.* at 248. On the other hand, if the facts are uncontroverted or, if we can resolve any dispute about the material facts raised in competing affidavits from the record of trial or the appellate filings, we may decide the legal issue without further proceedings. *Id.*

## 2. Analysis

Although we could easily dispose of appellant's challenge on prejudice grounds[3], we find his defense counsel was not deficient. Defense counsel investigated the leads provided, interviewed witnesses, obtained documentary and photographic evidence, and cogently presented a compelling case to a preliminary hearing officer.[4] Defense counsel's zealous representation persuaded a preliminary hearing officer that there was not probable cause to support the charges and their specifications. Even after CID special agents recovered deleted videos of appellant's sexual assaults, defense counsel negotiated a favorable plea agreement. Appellant's criticism that his counsel did not investigate or zealously represent him is contradicted by the record and the information provided by defense counsel in his affidavit.

## B. Appellant's Plea was Provident

Appellant maintains his guilty plea was improvident because his defense counsel "scared" him into pleading guilty. Appellant's claim is unavailing, as the record plainly establishes appellant pleaded guilty voluntarily, with full knowledge of its meaning and effect, because he was, in fact, guilty of the offense to which he pleaded guilty. Additionally, appellant fails to persuade that he would not have pleaded guilty but for his counsel's purported deficiencies.

## 1. Law

This court reviews a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). After a military judge accepts a plea as provident, "an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and

---

[3] Claims of ineffective assistance of counsel are often easier to dispose of on prejudice grounds and, if they can be, that is the preferred course. *Strickland*, 466 U.S. at 697.

[4] Defense counsel's affidavit and supporting documents show he investigated and obtained the materials appellant now suggests would have altered his decision to plead guilty to include: 1) messages between appellant and his wife; 2) financial records of money transfers from appellant to his wife, and 3) photos of appellant's wife depicting her without "bruises or signs of distress."

the accused's statements or other evidence of record." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996). We review "questions of law arising from the guilty plea de novo." *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) (quoting *Inabinette*, 66 M.J. at 322). "The voluntariness of a plea is a question of law which is reviewed de novo on appeal." *United States v. Andrews*, 38 M.J. 650, 653 (A.C.M.R. 1993) (citing *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983)).

When a claim of ineffective assistance is raised in the context of a guilty plea, appellant must demonstrate a "'reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial'" to establish prejudice. *Furth*, 81 M.J. at 117 (quoting *Lee v. United States*, 582 U.S. 357, 364–65 (2017)). "'Surmounting *Strickland*'s high bar is never an easy task.'" *Lee*, 582 U.S. at 368 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). A court should not disrupt a guilty plea "solely because of *post hoc* assertions from a[n accused] about how he would have pleaded but for his attorney's deficiencies." *Id.* Instead, it should "look to contemporaneous evidence to substantiate a[n accused's] express preferences." *Id.*

### 2. *Additional Facts*

A detailed description of every sexual assault appellant perpetrated on his wife is unnecessary. Suffice it to say, appellant, under oath, admitted he penetrated his wife's vulva on divers occasions, and her mouth, and her anus, with his penis, without her consent. He also stipulated, in detail, as fact, his repeated assaults.

Appellant secretly recorded his sexual assaults. When his wife discovered appellant had recorded her, she had him delete the recordings through a phone application. Appellant and his wife then collected the cameras, removed the digital media cards, and disposed of the cameras in the garbage.

Appellant's wife went to CID and alleged that appellant sexually assaulted her. She provided the digital media cards to CID special agents as potential evidence. She also provided a statement that described appellant's abuse. Approximately a month later, she recanted her allegations. The special agents did not cease their investigative efforts. Through these ongoing efforts, the special agents successfully recovered deleted videos from the digital media cards. These videos captured appellant sexually abusing his wife.

After appellant reviewed the recovered videos, he elected to plead guilty at a general court-martial. Some of the recovered videos were admitted as a prosecution exhibit during the court-martial.

Before accepting appellant's guilty plea, the military judge conducted a thorough providence inquiry. This inquiry ensured appellant understood the

meaning and effect of his guilty plea. Further, it established appellant pleaded guilty because he was guilty. The military judge afforded appellant every opportunity to say he was not guilty and to demand the government prove its case with competent evidence beyond a reasonable doubt. With full awareness of his rights, appellant declined to do so.

In addition to his sworn testimony, appellant voluntarily stipulated to facts that established his guilt. The military judge explicitly advised appellant, "[n]o one can be forced to enter into a stipulation," and that appellant, "should enter into it only if [he] truly want[ed] to do so," and that if admitted, the contents of the stipulation would be uncontradicted facts in the case. Appellant agreed he voluntarily entered the stipulation of fact because he believed it was in his best interest.

The military judge advised appellant of his rights regarding the stipulation and ensured appellant understood them. The military judge asked appellant to inform him "if there [was] anything [appellant] disagree[d] with or [felt was] untrue." The military judge did not rush appellant's review of his stipulation of fact. In fact, the military judge recessed the court-martial for twenty-two minutes so appellant could read the nine-page stipulation of fact. After affording ample time and opportunity to review the document, the military judge continued his inquiry:

| | |
|---|---|
| MJ: | [Appellant] have you finished reading the stipulation of fact? |
| [Appellant]: | Yes, your honor. |
| MJ: | Is everything in the stipulation true? |
| [Appellant]: | Yes, your honor. |
| MJ: | Is there anything in the stipulation that you do not wish to admit is true? |
| [Appellant]: | No, your honor. |
| MJ: | Do you agree, under oath, that the matters contained in the stipulation are true and correct to the best of your knowledge and belief? |
| [Appellant]: | Yes, your honor. |

*3. Analysis*[5]

Appellant's plea of guilty was voluntary. His claim that his defense counsel "scared" him into pleading guilty and that his plea was involuntary is unpersuasive.[6] Reviewing all relevant circumstances surrounding appellant's plea it is evident he pleaded guilty voluntarily.

Appellant's sworn testimony, stipulation of fact, and the videos of the sexual assault, admitted during appellant's guilty plea, were consistent and supported a rational and reasonable preference for appellant to plead guilty. Therefore, appellant's plea of guilty is void of "a substantial basis in law or fact [to] question[] the plea." *See United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (citation omitted). Both the stipulation of fact and the videos admitted corroborated appellant's colloquy with the military judge. Appellant, fully informed of his rights, voluntarily admitted, under oath, to sexually assaulting his wife, vaginally, orally, and anally, without her consent. Consequently, appellant's unequivocal admissions were provident, and the record before this court contradicts appellant's post-trial affidavit.[7] *See id.* (observing courts consider "the full context of the plea inquiry" to

---

[5] Appellant's second assignment of error asserts his plea was improvident. A subcomponent of his first assignment of error avers his defense counsel was ineffective because he did not "zealously defend" his client and instead convinced appellant to plead guilty. Accordingly, we address both the providence of appellant's plea and ineffective assistance of counsel in this section.

[6] Trial defense counsel established through emails that appellant's family hired a civilian defense counsel (CDC) to review appellant's case. Appellant acknowledges this in his second affidavit but claims he did not speak with the CDC. Contrary to appellant's claim, trial defense counsel noted the CDC held a conference call with himself and appellant, among others. It is unnecessary to resolve this dispute. Considering the videos that captured the charged sexual assaults, the CDC stated the plea agreement secured was "too good to be true," and surmised that appellant would receive a substantial sentence—fifteen to twenty-five years confinement—if he contested the case. If appellant heard this assessment, it reinforced his decision to plead guilty. If he did not hear it, the assessment bolstered the reasonableness of trial defense counsel's advice to appellant that he faced significant punitive exposure outside the protections of a plea agreement. Competently advising a client on the risk presented by a contested trial is not coercive and does not invalidate a guilty plea.

[7] Accordingly, we may resolve this case without a post-trial evidentiary hearing. *See Ginn*, 47 M.J. at 244 (noting a hearing "need not be ordered if an appellate court

(continued . . .)

include appellant's stipulation of fact, when determining if there is a substantial inconsistency (internal quotations omitted) (citation omitted)).

Appellant's rationale under this assignment of error for why his counsel was ineffective largely mirrors his assertion for why his plea was improvident. For the same reasons we find his guilty plea was voluntary and thus provident, we find he fails to establish prejudice. Simply stated, appellant cannot overcome the formidable standard established by *Strickland. See Lee*, 582 U.S. at 368. Appellant has not demonstrated a "reasonable probability . . . he would not have pleaded guilty and would have insisted on going to trial." *See Furth*, 81 M.J. at 117.

Irrespective of the exceedingly probative video evidence of appellant's guilt, defense counsel still secured favorable conditions through plea negotiations. The terms of the plea agreement dramatically limited the number of charges and specifications for which he would be prosecuted.[8] Appellant's accepted offer limited his punitive exposure further by combining three sexual assault offenses into a single specification.[9] Thus, appellant ultimately pleaded guilty to only one specification of sexual assault.[10] Appellant's punitive exposure was even further limited by a sixty-month cap on confinement.

Evidence contemporaneous with appellant's guilty plea substantiates his preference to plead guilty. Notwithstanding his wife's recantation, after investigators discovered videos of appellant's crimes, he quickly decided to plead guilty. Consequently, it is not reasonable to conclude appellant's plea was involuntary and that he would have insisted on going to trial but for being "scared" into pleading guilty by his defense counsel. *Lee*, 582 U.S. at 369 ("Courts should not upset a plea solely because of *post hoc* assertions" but rather should "look to contemporaneous evidence to substantiate [an appellant]'s expressed preferences.").

---

( . . . continued)
can conclude that the motion and the files and records of the case conclusively show that an appellant is entitled to no relief." (internal marks omitted) (citation omitted)).

[8] Initially, the government referred two specifications of willful disobedience, three specifications of sexual assault, one specification of indecent visual recording, thirteen specifications of domestic violence, and one specification of obstruction of justice, in violation of Articles 90, 120, 120c, 128b, and 131b, UCMJ.

[9] Appellant faced a maximum punitive exposure of 174 years and four months absent his agreement with the convening authority.

[10] The remaining specifications and charges were conditionally dismissed.

Additionally, "the full context of [appellant's] plea inquiry" makes clear there is not a substantial basis in law or fact to question his plea. *See Goodman*, 70 M.J. at 399.

### C. Restriction Tantamount to Confinement

Appellant argues he should receive credit for restrictions tantamount to confinement and his defense counsel was ineffective because he failed to move for *Mason* credit. First, because appellant was not so restricted, he is not entitled to credit. Second, defense counsel was not ineffective because a motion for *Mason* credit would not have been meritorious.

### 1. Law

A soldier, who is not confined pending trial, may be entitled to confinement credit if he is subject to pretrial restrictions so severe as to render the restrictions tantamount to confinement. *Mason*, 19 M.J. 274. Analysis whether restrictions are severe enough to be tantamount to confinement is "based on the totality of the conditions imposed." *United States v. Smith*, 20 M.J. 528, 530 (A.C.M.R. 1985), pet. denied, 21 M.J. 169 (C.M.A. 1985). This analysis will "closely scrutinize those factors which reflect substantial impairment of the basic rights and privileges enjoyed by servicemembers." *Id.* at 531. "[L]evels of restraint . . . fall somewhere on a spectrum that ranges from 'restriction' to 'confinement.'" *Id.* Scrutiny of the conditions imposed will identify whether "the level of restraint falls so close to the 'confinement' end of the spectrum as to be tantamount thereto . . . ." *Id.* (citing *Mason*, 19 M.J. 274).

Our predecessor court outlined several relevant factors to determine the nature of the pretrial restraint including: "the nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint." *Id.* The *Smith* court outlined additional conditions which may significantly affect one or more of the above factors. These conditions include:

> whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence; whether the accused was required to be under armed or unarmed escort; whether and to what degree the accused was allowed visitation and telephone privileges; what religious, medical, recreational, educational, or other support facilities were available for the accused's use; the location of the accused's sleeping accommodations; and whether the accused was allowed to

9

retain and use his personal property (including his civilian clothes).

*Id.* at 531–32.

When a claim of ineffective assistance of counsel is based on a failure to make a motion, appellant "must show that there is a reasonable probability that such a motion would have been meritorious." *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997) (citations omitted).

### 2. Additional Facts

After appellant's wife reported his sexual assaults to CID, appellant's commander placed conditions on his liberty. His commander issued a military protective order (MPO) on 3 April 2023. This order directed appellant to remain 1000 feet away from his spouse, home, and his spouse's workplace.

Appellant's commander imposed additional conditions on appellant's liberty on 7 April 2023. Appellant was informed he could not go to the housing areas, and other specified buildings on post. Appellant testified he could not leave the barracks without a noncommissioned officer escort. Per his testimony, appellant was able to go to the gym and dining facility with a junior enlisted escort. He also was directed not to drink alcohol.[11]

In addition to the conditions placed on his movement, appellant had periodic sign in requirements for accountability. On duty days he was directed to check in at the end of the duty day twice: 1800 and 2100 hours. On non-duty days he was to check in periodically in three-hour increments between 0900 and 2100 hours. He was not required to check in after 2100 hours.

Appellant retained several key liberties. He testified, while he could not take his children "off the building," he could pick them up with an escort and bring them

---

[11] Appellant notes in his brief that he could not leave "the squadron's footprint unless given permission by his command . . . ." He cites the record for this premise. The record only notes he was required to sign out with platoon leadership when he intended to leave the area for more than fifteen minutes. The record does not state he had to obtain permission before he could leave. Neither affidavit submitted by appellant states he required command permission to leave the area.

to his room.[12] He informed his defense counsel he was allowed to eat pizza and play games with his children, in his room, for several hours at a time. He informed his defense counsel that, while frustrated he needed NCO supervision to pick up and drop off his children, he was able to spend time alone with them at an on-post park. Appellant performed his normal military duties commensurate with his rank. Appellant told his defense counsel he kept his personal cell phone, could play video games with friends with his Xbox, retained his personal computer, and kept his civilian clothes and personal effects. Appellant was even permitted to drive his personal vehicle around post.

Appellant's conditions on liberty were not continuous from the date of his wife's allegations until his court-martial. In July 2023, approximately three months after imposing the conditions, appellant's commander lifted almost all the conditions on his liberty. Appellant testified that after the commander lifted most of the conditions:

> the MPO was still in place, but I could leave post, I could go pick my kids up without an NCO escort . . . . I could go off post with them and I could do any activity that didn't involve being near the housing areas or my wife.

Consequently, the record is clear there was a sizable break in time between periods when appellant—outside of the MPO—had almost complete freedom of movement. Appellant remained free of any condition—other than the MPO's limitation concerning his wife—for a month and a couple of days.[13]

---

[12] Appellant avers in his brief he was not allowed visitation with his children or allowed to call them without command permission citing the record. While not directly stated, his brief suggests these limitations were continuous. His present assertion is contradicted by his own testimony during his court-martial. A review of the record page appellant cited notes the heightened limitation was during a 72-hour period to allow the Family Advocacy Program time to complete an in-home and clinical assessment. However, earlier in the record, appellant testified he was allowed visitation with his children, even when restricted. Appellant also observed he could pick up his children without an escort and leave post with them during the time his commander lifted the conditions on his liberty. Appellant's court-martial testimony is corroborated by defense counsel's unrebutted affidavit.

[13] Appellant suggests in his reply brief to this court that the conditions on liberty were never lifted. Appellant's Reply Br., p. 4. This statement is incongruent with his sworn testimony at his court-martial where he clearly stated "those restrictions were lifted, eventually. I spent 3 months and a half under those restrictions, and they were lifted for about a month."

### 3. Analysis[14]

Close scrutiny of the facts surrounding the conditions on appellant's liberty does not suggest he suffered a "substantial impairment of the basic rights and privileges enjoyed by servicemembers." *Smith*, 20 M.J. at 531. The totality of the conditions imposed on appellant does not demonstrate he was effectively confined.[15] While his movement was limited, he was permitted access to the gym and dining facility. There is nothing to suggest he could not attend worship services, go to the post exchange, library, etc. While he may have required an escort, nothing indicates he was denied an escort when requested.

Appellant enjoyed significant privacy within the area of restraint. He lived in a barracks room and was not under guard or surveillance. He retained his personal effects, his civilian clothes and was permitted full use of his phone, Xbox, and computer, without supervision. He could visit with his children alone in his room and was generally unencumbered by periodic check-ins from his unit while he was in his room.

Although appellant had to sign in with the charge of quarters desk periodically, this requirement was not onerous. When conditions on his liberty were reimposed on 22 August 2023, the non-duty day sign in requirements were further limited in frequency to 0900, 1500, and 1900 hours.

Applying the *Smith* factors to appellant's circumstance and considering the conditions on his liberty holistically with his retained freedoms, it is evident he was not "subject[ed] to pretrial restrictions so severe as to render the restrictions tantamount to confinement." *United States v. Wright*, ARMY 20230333, 2025 CCA

---

[14] Appellant argues in his first assignment of error his defense counsel was ineffective because he failed to request *Mason* credit. In his third assignment of error, he claims he is entitled to *Mason* credit. Accordingly, both assertions are addressed in this section.

[15] Development of this topic was not a model of clarity on the record. Trial counsel amended the charge sheet to annotate the nature of appellant's restraint as "restriction in lieu of arrest" from 3 April 2023 to 3 November 2023, and "conditions on liberty" from 3 April 2023 to 3 November 2023. The unbroken temporal span is certainly incorrect. Additionally, we are not bound by the government's characterization of the nature of the restraint as "restriction in lieu of arrest." *See United States v. Wilkinson*, 27 M.J. 645, 649 (A.C.M.R. 1988) (citing *United States v. Walls*, 9 M.J. 88, 90 (C.M.A. 1980)) (observing the "legal effect of restraint imposed upon an accused prior to trial is to be judicially determined."). Here it is evident appellant was not restricted in lieu of arrest and the command merely imposed conditions on his liberty.

LEXIS 353, at *8 (Army Ct. Crim. App. 29 July 2025) (mem. op.) (citing *Mason*, 19 M.J. 274), pet. denied __ M.J. __, 2025 CAAF LEXIS 922 (C.A.A.F. 5 Nov. 2025). Analysis of the relevant factors demonstrate the conditions on appellant's liberty did not amount to a "level of restraint . . . so close to the 'confinement' end of the spectrum as to be tantamount thereto . . . ." *See Smith*, 20 M.J. at 531.

Trial defense counsel was not ineffective for failure to move for *Mason* credit because appellant cannot "show that there is a reasonable probability that such a motion would have been meritorious." *Napoleon*, 46 M.J. at 284. As discussed, the conditions on appellant's liberty were not so onerous that he was essentially confined. Consequently, a motion for *Mason* credit would not be meritorious and counsel was not ineffective for not making one. *See id.*

### D. Speedy Trial: Rule for Courts-Martial 707

Appellant waived his R.C.M. 707 claim.[16] Even if not waived, his contention the military judge erred by not dismissing the charges and specifications on speedy trial grounds lacks merit. He was not subject to restrictions tantamount to confinement, as he suggests. Accordingly, R.C.M. 707 was not triggered until charges were preferred on 21 August 2023, and he was arraigned within 120 days.

### 1. Law

We review whether an issue is waived de novo. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020). It is clear, in the current version of R.C.M. 707(e), an unconditional plea of guilty waives a speedy trial claim to that offense. The President amended R.C.M 707(e) through Executive Order 14,103. 88 Fed. Reg. 50,535 (Aug. 2, 2023) [Exec. Order 14,103]. The amendment states an accused waives any speedy trial issue related to the offense to which he unconditionally pleaded guilty. *Id.* at 50,556–57. Prior to the amendment, the R.C.M. provided an unconditional guilty plea merely forfeited the issue on appeal. Rule for Courts-Martial 707(e), *Manual for Courts-Martial, United States* (2019 ed.). But "forfeit" was amended to "waived," effective 28 July 2023; the day the President signed Exec. Order 14,103. 88 Fed. Reg. 50,535–536.

The Court of Appeals for the Armed Forces reiterated the difference between waiver and forfeiture by stating: "'[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *Davis*, 79 M.J. at 332 (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). Thus, this court may "review forfeited issues for plain

---

[16] Appellant briefly alludes to Article 10, UCMJ, in his opening and reply briefs. We have considered his undeveloped assertion and find it lacks merit.

error," but "'we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.'" *Id.* (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

## 2. *Analysis*

Appellant waived any allegation of error pursuant to R.C.M. 707. Both appellant and government counsel incorrectly contend appellant merely forfeited his R.C.M. 707 claim. The government preferred charges and reimposed conditions on his liberty on 22 August 2023, a date after the effective date of the amendments directed by Exec. Order 14,103. 88 Fed. Reg. 50,535–36. Therefore, in accordance with the amendment to R.C.M. 707(e), appellant waived any speedy trial issue related to the offense to which he unconditionally pleaded guilty and we "cannot review waived issues at all." *Davis*, 79 M.J. at 331 (quoting *Gladue*, 67 M.J. at 313) (internal quotations omitted).

Even if not waived, appellant is not entitled to relief. Appellant was neither confined nor subject to a restriction tantamount to confinement. UCMJ art. 10; R.C.M. 707(a). Further, the conditions on his liberty—irrespective of appellant's arguments on appeal—were not continuous from 7 April 2023 to 21 November 2023 (the date of arraignment). Appellant's commander lifted restrictions in July 2023 for over a month. Accordingly, his calculation that 228 days elapsed is incorrect. There was an approximate 30-day break which is sufficient to have restarted the R.C.M. 707 clock. R.C.M. 707(b)(3)(B). Accordingly, defense counsel was not ineffective for failure to move to dismiss because appellant cannot "show that there is a reasonable probability that such a motion would have been meritorious." *See Napoleon*, 46 M.J. at 284.

## CONCLUSION

On consideration of the entire record, the finding of guilty and the sentence is AFFIRMED.

Senior Judge COOPER and Judge SCHLACK concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court